ELBRIDGE G. ALDEN & another *vs.* JOHN H. PEARSON & another.

In an action of contract for neglecting to carry and deliver goods of the plaintiff accord ing to the terms of a bill of lading made part of the declaration, if the answer does not deny the plaintiff's ownership of the goods, but expressly admits the shipment of the goods by the plaintiff, and the defendant's promise to him to carry and deliver them, the defendant cannot dispute the right of the plaintiff to maintain the action, on the ground that the bill of lading stipulates for their delivery to another person, nor on the ground that the defendant had received no notice of the right of the plaintiff to contro. the bill of lading.

No demand is necessary before commencing an action for property lost or destroyed by person having it in custody.

The owner of goods shipped, part of which are lost or destroyed by neglect of the carrier, may maintain an action against him for the value of the goods lost, without previous payment or tender of freight, if he has received the remainder of the goods with the carrier's consent.

The receipt by the owner, of the whole number of casks of goods shipped, does not pre-vent him from maintaining an action against the carrier for the loss of part of the con-tents, unless the jury find that he received the property as and for a compliance with the contract of the carrier.

In an action on a bill of lading, by which the shipowner promises to deliver the goods "in like good order and condition as received, dangers of navigation and fire excepted," after proof of loss and failure to deliver, the burden of proof is on him to bring such loss and failure within the exception.

Proof of delivery of goods to a common carrier, and of a demand and refusal of the goods,

or of such loss of goods as rendered a demand useless, throws the burden of proof on the carrier to show that the loss of the goods happened by dangers for which he was not liable.

THOMAS, J.   This is an action of contract.   The trial was in the court of common pleas.   The declaration avers that on the 31st of July 1852 " the defendants were owners of barque Lucy, lying at the port of New Orleans and bound for Boston and were common carriers of goods and chattels for hire from said New Orleans to said Boston; and being such carriers, the plaintiffs then, at the request of the defendants, caused to be shipped on board said barque Lucy certain goods of the plaintiffs, to wit, two hundred and eighteen barrels and two hundred and sixty three tierces of lard, in good order and condition, to be taken care of and safely and securely conveyed by the defendants to Boston aforesaid, and there to be delivered in like good order and condition (the dangers of navigation and fire excepted) to Harrison Fay & Co. or to their assigns ; and in consideration thereof and of a certain freight to be paid by the plaintiffs to the defendants, to wit, thirty five cents per barrel, and forty five cents per tierce, the said defendants became bound by law as such carriers as aforesaid, and by their bill of lading (a copy of which is hereto annexed) undertook and promised the plaintiffs to take care of and safely convey the said goods, and deliver the same as aforesaid ; yet the said defendants did not take care of and safely and securely convey and deliver said goods in good order and condition to the said Harrison Fay & Co. or their assigns at Boston aforesaid, the dangers of navigation and fire excepted, but have wholly neglected so to do ; and on the contrary, so carelessly and improperly conducted themselves in the premises, that by their negligence and default said lard was greatly damaged, and a large quantity thereof, to wit, two thousand pounds, of the value of twenty five hundred dollars, was wholly lost.   There is then annexed to the declaration a copy of the bill of lading, in which the master acknowledges the receipt of the goods in good order and condition, and stipulates to deliver them in like good order and condition at the port of Boston to Harrison Fay & Co. or their assigns, (the dangers of

navigation and fire excepted,) they paying freight, as stated in the declaration.

To this declaration the defendants made the following answer: " They admit that on the 31st day of July in the year 1852 they were owners of the barque Lucy, lying at the port of New Orleans and bound for Boston. They admit that the plaintiffs caused to be shipped on board said barque Lucy certain goods, to wit, 218 barrels and 263 tierces of lard. They admit that, in consideration of 35 cents per barrel and 45 cents per tierce to be paid them as freight by the plaintiffs, they promised the plaintiffs to convey said goods from New Orleans to Boston aforesaid, and there to deliver them to Harrison Fay & Co. or their assigns, in like good order and condition as received, dangers of navigation and of fire excepted. And they neither affirm nor deny that they were then and there common carriers, or that they received said goods, or promised the plaintiffs to carry and deliver them as common carriers; but are ignorant thereof, and leave the plaintiffs to prove the facts. And they deny, of their information and belief, that the goods were received in good order and condition. And they deny of their own knowledge that they carelessly and improperly conducted themselves in the premises; that by their negligence and default said lard was greatly or at all damaged, and a large quantity thereof, to wit, 2,000 pounds, of the value of 2,500 dollars, or any other quantity, was wholly lost."

We have given the declaration and answer in full, with a view to questions of practice which the case raises.

The *St.* of 1852, *c.* 312, § 14, provides that " the answer shall deny, in clear and precise terms, every substantive fact intended to be denied in each count of the declaration separately, or shall declare the defendant's ignorance of the fact, so that he can neither admit nor deny, but leaves the plaintiff to prove the same. Section 17 provides that, " to raise an issue at law, the answer shall contain the statement that the defendant demurs to the declaration, or to some one or more counts therein, as the case may be, and shall assign specially the causes of demurrer." Section 26 provides that " any substantive fact, alleged with sub-

stantial precision and certainty, and not denied in clear and pre-
cise terms, shall be deemed to be admitted." These are stringent
provisions, the careful and strict application of which will give
some reasonable brevity to trials. In their light let us look at
some of the exceptions.

The plaintiffs offered evidence to show that Fay & Co. were
merely agents of the plaintiffs for the purchase of the lard, and
had no interest therein. To the admission of this evidence the
defendants objected, assigning as cause of objection "that, as
the bill of lading provides for the delivery to Fay & Co., the
plaintiffs cannot contradict or control that undertaking by proof
of the alleged agency of Fay & Co." "The court admitted
the evidence, not for the purpose of contradicting the bill of
lading, but upon the ground that the plaintiffs, upon proof that
Fay & Co. acted as their agents in making the original pur-
chase, might maintain a suit in their own names, as principals,
for the non-performance of the contract exhibited in the bill of
lading." We think this ruling was right; but no such question
was open in the cause.

The plaintiffs had averred in the declaration that they were
the owners of the goods, and that the contract for their carriage
was with them. The defendants, in their answer, make no de-
nial of the ownership of the plaintiffs. Not denying, they admit.
Still further, they admit the plaintiffs caused the goods to be
shipped on board said barque, and that, in consideration of freight
to be paid them by the plaintiffs, they promised the plaintiffs
to convey said goods from New Orleans to Boston, &c. The
introduction by the plaintiffs of evidence of title was there-
fore wholly unnecessary. The questions of title to the goods,
and with whom the contract was made, were settled upon
the record.

At the close of the evidence, the defendants asked the court to
instruct the jury, "that the plaintiffs cannot maintain any suit
upon the bill of lading against the defendants." This question
was not open. This bill of lading was made part of the declar-
ation. No answer, by way of demurrer, had been made, to raise
a question of law; but on the contrary, the defendants had

admitted that they had promised the plaintiffs to carry the goods safely. The court refused so to instruct the jury, and rightly instructed them that upon these pleadings, upon proof of damage, the plaintiffs could maintain the suit. The qualification " if the master acted within the scope of his authority," was unnecessary; for, after the express admission by the defendants of their promise to the plaintiffs, the question of the authority of the master was not open.

The defendants, secondly, requested the court to instruct the jury, that, " assuming that the plaintiffs, as owners or otherwise, may control the bill of lading, by showing that Fay & Co. were their agents, the plaintiffs are not entitled to maintain the suit against the defendants until after notice to the defendants of their right to control the bill of lading, followed by a demand of the property, or by a notice of their claim to exercise their rights as owners." How could such a question be made upon a record in which the plaintiffs had averred their title, and the defendants had not denied it, and, not having denied, must be held under the practice act to have admitted it; and in which still further the defendants, in terms, had admitted that the plaintiffs shipped the goods, and that they, in consideration of freight to be paid by the plaintiffs, promised the plaintiffs to carry them safely; even if it had any ground in law to stand upon ?

If the question were open, the court rightly refused so to instruct the jury, and properly instructed them, " that where property had been lost or destroyed by a person having it in custody, no notice of the title of the principal, or demand upon such person by the principal, was necessary."

Thirdly, the defendants requested the court to instruct the jury, " that the plaintiffs are not entitled to recover, except upon proof of payment or tender of freight." The court refused to give this instruction. The ground upon which it was claimed was, that the defendants had a lien upon the lard for their freight, and were not bound to deliver the property till that lien was discharged. To that which was lost, and for the loss of which the plaintiffs sought to recover, no lien, of course, could attach. In relation to that received by the plaintiffs, through their agents, Fay & Co.,

though the plain question of waiver of lien was not put to the jury, yet the same question, in substance and effect, was put, to wit, " whether the property was taken away by Fay & Co. without the consent of the defendants," upon the ruling by the court, to which no exception is made, " that any acts done by Fay & Co., in regard to the property, would be binding upon the plaintiffs; and that if Fay & Co. removed the property without the defendants' consent, so as to prevent their making a complete examination of it, or in any way to affect their rights or interests in regard to this suit, their thus taking the property would be held an acceptance of it in full satisfaction of the contract in the bill of lading, and would bar this action."

The fourth prayer for instruction was " that if the defendants, upon arrival of the Lucy, gave notice to Fay & Co. of the arrival at the wharf of the property which was consigned to them, and that it was ready for delivery, the plaintiffs cannot recover, except upon proof of a demand of a delivery, made subsequently to such notice, and before suit brought." This instruction was refused, upon the plain ground that a demand wholly useless and nugatory need not be made. Such is a demand for property lost or destroyed.

The defendants' fifth prayer for instruction was, that " if the jury are satisfied that the defendants delivered to Fay & Co. the 218 barrels and the 263 tierces mentioned in the bill of lading, although they did not contain so much lard as when received on board the ship, the plaintiffs cannot recover in this form of action for any injury done to the property while in the custody of the defendants." This instruction the court refused to give, but thereupon instructed the jury " that if Fay & Co. had accepted the property as and for a compliance with the obligation contained in the bill of lading, the plaintiffs were bound by such acceptance, and that the plaintiffs were bound by all the acts of Fay & Co." This instruction and refusal to instruct were right. The defendants admit by their answer a contract to carry the goods safely. Whether the goods received were taken as and for a compliance with that contract, was a question of fact for the jury.

The last request for instruction was this : " It is incumbent upon the plaintiffs to satisfy the jury that the loss, if any, was the result of the negligence, or of the improper acts of the master, or of the defendants, or of some one in their employment " The court instructed the jury that " so far as the plaintiffs allege negligence, the burden of proof is upon them ; but if the plaintiffs have shown the reception of a certain quantity, and a failure to deliver the same quantity, the burden then is upon the defendants to show some reason for such short delivery." This instruction was certainly favorable to the defendants, who had admitted upon the record the shipping of the goods by the plaintiffs, and the defendants' promise, for a good consideration, to convey the goods from New Orleans to Boston, and there to deliver them " in like good order and condition as received, dangers of navigation and fire excepted." Upon proof of loss and failure to deliver, it was incumbent on the defendants to show that such loss and failure were within the exceptions stated in the contract.

And further, the defendants, upon the evidence, were common carriers, putting up their bark for general freight. Proof of the delivery of the goods, (which the answer admitted,) and of a demand and refusal, or such loss of goods as rendered the demand useless, threw the burden upon the defendants to show the loss happened by the dangers excepted. Angell on Carriers, § 472, and cases cited. *Clark* v. *Barnwell,* 12 How. 272.

*Exceptions overruled.*

*C. B. Goodrich,* for the defendants.

*T. L. Wakefield,* (*J. H. Wakefield* with him,) for the plaintiffs.