MARGUERITE B. REDDING, Administratrix, *vs.* WILLIAM A. GODWIN and another.

October 6, 1890.

| | |
|---|---|
| 44 | 355 |
| 47 | 228 |
| 47 | 264 |
| 44 | 355 |
| 49 | 328 |
| 44 | 355 |
| 56 | 507 |
| 44 | 355 |
| 69 | 39 |
| 44 | 355 |
| 80 | 423 |

**Evidence—Resolutions of Corporation.**—Resolutions adopted or declarations made at a corporate meeting are not evidence of the truth of matters recited or declared as against persons not members of the corporation.

**Same—Insolvency of Corporation.**—The insolvency of a corporation at a particular time is not shown by proof that several weeks after that time it made a general assignment for the benefit of creditors.

**Same—Value of Property—Price Realized by Assignee in Insolvency.** The price for which an assignee in insolvent proceedings sold the property of the assignor is not conclusive proof of the real value of the property in an action not connected with the insolvency proceedings.

**Deceit in Sale of Stock of Corporation—Measure of Damages.**—In an action to recover damages for deceit as to the condition of a private corporation, by means of which the plaintiff was induced to purchase stock of the corporation, the measure of damages is the difference between the value of the stock and the price paid for it. While the *market* value is ordinarily to be taken as the value for the assessment of damages, yet, if it be shown that the corporation was insolvent, it is not to be *presumed* that the stock had a market value different from its intrinsic worth, and the latter may be shown as a basis for the assessment of damages.

**Evidence—Admissions.**—Proof of admissions made *either* by a party to the action *or else* by a stranger is not admissible.

**Same—To Disprove Conspiracy.**—In an action charging a conspiracy between the defendants to defraud the plaintiff, evidence is admissible on the part of one of the defendants that he never had any conversation with the other upon the subject of the alleged conspiracy.

**Patronage as Element of Value of Business.**—An established patronage or custom in the sale of goods (milk) may be of substantial value.

**Evidence—Whether Business of Corporation was Prosperous.**—The question being whether the general business of a corporation was prosperous, it is not error to exclude an offer to prove that a profit was derived from a certain part (only) of its business.

Same—Conversation of Party with Deceased Person.—It appearing from the testimony of a disinterested witness that the defendants made to the plaintiff (deceased since the commencement of the action) the fraudulent representations for which a recovery is sought, the defendants are not permitted (under the statute) to testify that, in the conversation with the deceased, referred to by such witness, they made no such representations.

Same—Continuance of Insolvent Condition.—The admissions of the defendants that on June 18th and August 2d the corporation of which they were members was insolvent is *prima facie* evidence against them that it continued to be so until the 11th day of August following.

Appeal by the defendants, William A. Godwin and Charles A. Wright, from an order of the district court for Hennepin county, *Hooker, J.,* presiding, refusing a new trial.

*Gilger & Harrison,* for appellant Godwin.

*Weed Munro,* for appellant Wright.

*Benton & Roberts,* for respondent.

DICKINSON, J. This action, commenced by Frank P. Redding, who died prior to the trial, is for the recovery of damages for alleged fraudulent representations of the defendants concerning a corporation known as the "Minneapolis Milk Association," by means of which representations, as it is claimed, Redding had been induced to purchase from the defendant Godwin 30 shares of the capital stock of the corporation for the agreed price of $3,000. It is alleged that the two defendants entered into a conspiracy to induce Redding, by means of false representations, to make the purchase. It is also alleged that both the defendants falsely and fraudulently represented to Redding (1) that the corporation was owing no debts; (2) that its business was in a prosperous condition; and (3) that it was earning $18 a day in excess of expenses. We do not particularly refer to some other allegations, which were not supported by the evidence. There was evidence that both defendants made the representations above indicated, and that such representations were false. The jury returned a verdict for $1,900 against both defendants.

The sale by Godwin to Redding was completed on the 11th day of August. The records of the corporation, under date of September

18th of the same year, were received as evidence on the part of the plaintiff, setting forth a resolution adopted at a meeting of the directors and stockholders, wherein it was recited that property of the corporation had been levied upon under attachment and garnishee proceedings issued out of the municipal court of the city of Minneapolis; that the corporation was unable to carry on its business; that a general assignment for the benefit of creditors, under the insolvent law of 1881, was necessary; and resolving that such an assignment be made. The records of the district court were also introduced, embracing such an assignment made on the 20th of September, a verified inventory of the liabilities and assets of the corporation, the assignee's final account, showing, among other things, the amount realized by him from a sale of the property of the corporation, and an order approving the assignee's account. At a subsequent stage of the trial the defendants offered to show that the property was worth more than four times as much as it was sold for by the assignee; but this evidence was excluded.

The record of the corporation was not competent evidence, as against these defendants, neither of whom were then members of the corporation, of the matters there recited; that is, that the corporate property had been attached, that it could not continue its business, and that insolvency proceedings were necessary. Nor was the resolution to make an assignment, nor the assignment itself, nor the record of the assignment proceedings in the district court, proof, as against these defendants, of the insolvency of the corporation at the time of the alleged false representations, and of the purchase of the stock. The mere fact that the corporation made an assignment subsequent to the sale in question, and after the defendants had ceased to be identified with the corporation, was immaterial. We have referred to these matters, not so much as grounds upon which the decision of this appeal will rest, as because it seems probable that the effect of such evidence may be important upon another trial. It is probably true that other evidence in the case before us shows conclusively that the alleged representations as to the condition of the corporation were untrue. The admissions in the testimony of the defendants, including their concurrence in the assessment upon

stockholders to meet the liabilities of the corporation, tend strongly to that conclusion. .But, even though that be true, there must be a new trial, for the reason now to be stated.

There was no proof as to the market value of the stock at the time of the sale to Redding, and the only basis presented for an assessment of damages, aside from the fact of the insolvency of the corporation, consisted of proof of the liabilities of the corporation, and the amount or value of its property. The plaintiff was allowed to show the value of the property by proof of the sum for which the assignee in insolvency sold it; while the defendants were not allowed to prove that in fact the property was worth more than four times that amount. As to the actual value of the corporate property these defendants were not concluded in this action by proof of the price for which the assignee may have sold it. It was error to exclude proof of the value, and for this a new trial must be granted. The error may have affected at least the amount of the recovery. In this connection we will say that the proper measure of damages in such an action is the difference between the value of the stock at the time it was purchased and the price paid for it. *Reynolds* v. *Franklin*, *supra*, p. 30, and cases cited; *Peek* v. *Derry*, 59 Law T. (N. S.) 78. If such property has a definite market value for which it can be readily sold, that is to be taken as its value, as in the case of other kinds of property. The market value and the intrinsic value are not necessarily the same.

It is contended that, in the absence of proof of the market value of the stock, or that it had no market value, a recovery cannot be predicated upon proof of its intrinsic value. If it were shown that the stock was of *no* intrinsic value it would be inferable that it had no market value. *Miller* v. *Barber*, 66 N. Y. 558, 568. And while it may be possible that the stock of an insolvent private corporation, a corporation which is unable to discharge its liabilities in the usual course of business, may have some definite market value different from its intrinsic value, this is not to be presumed; and in such a case the intrinsic value, ascertained from the value of the corporate assets and the amount of its liabilities, may be taken as the basis for the assessment of damages. If in fact such stock had a definite

market value different from its intrinsic worth, that may be shown by the adverse party.

The statement-testified to by Chute as having been made by *either* Brown or Wright, to the effect that the corporation was embarrassed, was not proper evidence. It was not shown to be the admission of the defendant, and, if made by Brown, it was mere hearsay evidence.

While there was not sufficient evidence to justify the conclusion that the defendants had *conspired* to defraud Redding, it is still possible that the jury might have inferred that there was a conspiracy from the fact that both defendants made similar false representations; and the court instructed the jury upon the law of conspiracy. As the case stood, the defendant.Wright should have been allowed to meet the charge of conspiracy by testifying that he never had any conversation with Godwin upon the subject, or else the court should have withdrawn from the consideration of the jury the matter of the alleged conspiracy. We do not deem this to have a very important bearing in the case, since the verdict must have been based on the fact found that both defendants made the fraudulent representations alleged, and their legal responsibility would be determined by such fraudulent conduct, even though there were no conspiracy to defraud.

Evidence was excluded, on the ground that it was immaterial, as to the value of the company's "milk routes." We understand these milk routes to be the patronage or custom which the company had secured in its business of selling milk. If this was of substantial value, and we cannot say that it was not, we think that the evidence was material, as bearing at least upon the amount of damages.

There was no error in excluding the proof offered to be made by the testimony of the witness Brown to the effect merely that the cost of producing butter was 16 cents a pound, and that the company sold it for 25 cents a pound during July and August. The proof offered would have been insufficient to show that the business of the corporation as a whole was profitable.

The statement of Wright to Newell, referred to in the second assignment of error, was receivable as an admission affecting Wright

·personally, although, in the absence of evidence of a conspiracy, no effect should be given to it as respects the defendant Godwin.

The testimony of the witness Alden, referred to in the 23d assignment, was not subject to objection on the part of Wright, for the reason that it appears that he was present and participated in it.

One Wilson, a witness for the plaintiff, testified to a conversation between Redding and the defendants, wherein the latter made the representations to which we have referred. In defence an offer was made to show by the testimony of the defendant Godwin that there was no such conversation. This was excluded, as being within the statute which disables a party to an action, or one interested in the event thereof, from giving evidence "of or concerning any conversation with or admission of a deceased or insane party or person relative to any matter at issue between the parties." Gen. St. 1878, c. 73, § 8. It was not proposed to show, as we understand the case, that there was no conversation between the parties on the occasion referred to by Wilson, but only that in the conversation referred to Godwin did not make the statements testified to by Wilson. This was within the terms of the statute. The surviving party could not have been allowed to state what the conversation was, and it was not permissible for him to do indirectly what he could not have thus done directly, by testifying that in the conversation he did not make the statements attributed to him by the testimony of Wilson. We think, too, that the court was right in excluding the testimony of Wright as to inquiries which Redding may have addressed to him.

Some of the errors assigned are not material, in view of the admissions in the testimony of the defendants as to the condition of the corporation. It was proper to show the fact that, at the corporate meetings of June 18th and August 2d, the defendants concurred in the expression of the opinion that assessments upon the stockholders were necessary to meet the liabilities of the corporation, and in the making of such assessments. This was of the nature of an admission by the defendants of facts contrary to the alleged fraudulent representations to Redding. Although the records of the corporate meeting might not alone have been competent evidence of the de-

fendants' individual concurrence in such action, yet such concurrence was shown by the testimony of the defendants themselves.

We deem it unnecessary to refer particularly to the numerous other assignments of error.

Order reversed.