MOFFITT v. HEREFORD, *Appellant.*

Division One, February 18, 1896.

132   513
92a  ¹240

1. **Evidence**: CORPORATE STOCK: MARKET VALUE. The market value of corporate stock is the price at which it usually sells, and this often differs greatly from the actual or intrinsic value.

2. ——: ——: ——. Where one is to be charged for stock which has no ascertainable market value, its actual value must be taken, in determining which the value of the corporate assets, the dividends paid, the character and permanency of the business, the control of the stock, and other circumstances of a like nature, may be taken into consideration.

3. ———: ———: ———.  A sale during administration of one share of stock which carried with it a controlling interest in the corporation, *held,* not sufficient to fix the market value at the time of distribution of the estate among the heirs.

4. ———: ———: ———.  A sale two years after settlement of an administration *held,* some evidence of value at the time of distribution to the heirs, it appearing that the value of the corporate assets and the annual dividends varied but little during the entire period.

5. ———: ———: EXPERT TESTIMONY.  The opinion of an experienced stock broker is competent on the question of the value of corporate stock.

6. ———: ———: PRIMA FACIE VALUE.  The par value of corporate stock is *prima facie* its actual value.

7. ———: ———: ———.  An appraisement of corporate stock in the hands of an administrator by three householders appointed by such administrator is not, as between him and the distributees, the *prima facie* value of the stock at the time of the appraisal.

8. **Supreme Court Practice:** TRIAL WITHOUT A JURY.  Where the issues are tried by the court alone the same rules of strictness are not enforced on appeal as where the trial was with the aid of a jury.

*Appeal from St. Louis County Circuit Court.*—HON. RUDOLPH HIRZEL, Judge.

AFFIRMED.

*Merrifield W. Huff* and *Thomas Thoroughman for* appellant.

(1)  The court erred in permitting Geo. L. Edwards to testify as an expert.  *First,* because this is not a case for expert testimony; and, *second,* because his examination did not show him to be an expert as to the value of this kind of stock.  *Hewitt v. Steele,* 118 Mo. 474; *Brinkerhoff, etc., Co. v. Home Lumber Co.,* 118 Mo. 447; *Sistara v. Olcott,* 15 N. Y. St. Rep. 246, 42 Ohio, 30.  (2)  The court erred in allowing Moffitt and others to testify as·to what in their judgment this stock could be sold for, though they admitted that they

did not base their judgment upon actual sales.   See cases cited above.  1 Spelling on Corp., sec. 499; Cook on Stock and Stockholders, sec. 581.   (3)   The evidence of a sale of the stock made long after the final settlement was improperly admitted in evidence.   The stock was turned over to the beneficiaries, November 23, 1891.   The trial was held April 13, 1894.   The evidence objected to was of a sale made two or three weeks before the trial.   This was over two years after the final settlement.   *Glover v. Holliday*, 109  Mo. 108. (4)   The court erred in refusing  the third instruction offered by appellant.   R. S. 1889, p. 85.   (5)   The instruction given for respondent is faulty, *first*, because it does not confine the finding to the value of the stock at the time it was turned over by the administrator; and, *second*, because the want of stability of the business is erroneously made one of the elements in determining  what the value of this stock was at the time it was administered.   *Glover v. Holliday*, 109 Mo. 108; cases above cited.

*Orr, Christie & Bruce* for respondent.

(1)   It was not error to  permit witness Edwards, who qualified as an expert on the value of stocks, to give his opinion as to the market value of the stock in question.   *Glover v. Holliday*, 109 Mo. 108; *Sistara v. Olcott*, 15 N. Y. St. Rep. 248; *Benjamin v. Railroad*, 50 Mo. App. 602; *Thompson v. Ish*, 99 Mo.  160; *Bowne v. Ins. Co.*, 46 Mo. App. 473; *Fry v. Estes*, 52 Mo. App. 1; *Riley v. Sparks Bros.*, 52  Mo. App. 572.   (2) In the absence of a known market value, established by sales, it was proper for the court to allow the managing officers of the company,  having full knowledge of its affairs, to state what in their judgment was the actual value of the stock.   *Hewitt v. Steele*, 118 Mo.

474; *Tate v. Railroad,* 64 Mo. 149; *Railroad v. Calkins,* 90 Mo. 538; *Railroad v. DeLissa,* 103 Mo. 125; *Railroad v. Chapman,* 38 Kan. 307; *Simpson v. Low,* 49 Barb. 382; *Lanning v. Railroad,* 68 Iowa, 502; *Freon v. Carriage Co.,* 42 Ohio St. 30. (3) It was proper to show any sale made prior to date of trial, where all the circumstances attending the sale could be adduced, it further appearing that the condition of the company, had not materially changed between the date of distribution by the administrator and the date of such sales. *Douglas v. Merceles,* 25 N. J. Eq. 444; *Brown v. Lawton,* 6 N. Y. Sup. 137; *Brinkerhoff, etc., Co. v. Lumber Co.,* 118 Mo. 447. (4) This case was tried before the court without the aid of a jury, and the same rigid rules in regard to the admission and exclusion of evidence ought not to be enforced as if the case had been tried before a jury, for it is not to be presumed that the court would, in its deliberation and judgment, have been influenced by evidence of this character, although a jury might have been misled thereby. *McCollough v. Ins. Co.,* 113 Mo. 606; *Hellman & Co. v. Bick,* 55 Mo. App. 168. (5) Instruction number 3, offered by administrator, did not correctly state the law as applicable to the case at bar and was properly refused. *Norton v. Paxton,* 110 Mo. 456; *Marshall Livery Co. v. McKelvy,* 55 Mo. App. 240; *Bunker v. Hilber,* 49 Mo. App. 536; *Long v. Long,* 44 Mo. App. 141. (6) The instruction given at the request of exceptors covered every element in the case and was without error. The administrator utterly failed to fix any date of distribution by his evidence, nor did he refer to it in his instructions submitted to the trial court. It is apparent from the evidence offered by exceptors and the finding of the court that the time considered was 1892, which was in fact the date of distribution.

MACFARLANE, J.—This proceeding grows out of a final settlement, filed in the probate court of the city of St. Louis, December 13, 1892, by appellant, as administrator of J. A. Pozzoni, deceased.

By his final settlement the administrator asked credit for $9,000, commission on one hundred and eighty shares of stock in the J. A. Pozzoni Medicated Complexion Powder Company, which he had distributed to the heirs. Samuel Moffitt, as guardian of two of the heirs of deceased, objected to the allowance of this credit. The credit was allowed by the probate court and the guardian appealed to the circuit court, where, upon a trial anew, the amount of the credit was reduced to $3,375. From that judgment the administrator appealed to this court.

Upon the trial in the circuit court the entire controversy, so far as this record shows, were over the value of these shares of stock, at the time they were distributed to the heirs.

The capital stock of the corporation was $20,000 divided into two hundred shares of the par value of $100 per share. It was engaged in the manufacture and sale of a proprietary preparation, known as "Complexion Powder." The value of the property of the corporation, its assets, did not exceed the par value of its stock. Its stock was not listed or on the market. Only two sales were shown to have been made, one during the administration and the other about two years after the final settlement was filed. The first was of but one share, which sold for $1,000. This share carried with it the controlling interest in the company. The second sale was of eight shares at $250 per share. The net profits or dividends in 1887 were $12,800 ; in 1888, $35,000; in 1889, thirty-five per cent; in 1890, $25,500; in 1891, $26,000; since 1891 the dividends were about

fifty per cent per annum. In December, 1891, the shares were valued by three appraisers, appointed by the administrator, at $1,000 per share. It was shown that the success of the manufacture and sale of such proprietary articles depends upon judicious advertising, good management, and constant vigilance.

I.    The market value of a commodity, whether it consists of stocks in a corporation or of a more tangible property, is the price at which it commonly sells. The market value of stocks which are listed and upon the market is easily ascertained. Such value and the intrinsic, or actual, value often vary greatly. Stock that has no intrinsic value may bear a good price in the market while stock that is intrinsically valuable may be, for certain causes, much depreciated in value.

When one is to be charged for the value of stock the market value should be taken if it can be ascertained. This is determined by sales in the market at or about the time. "If no sales can be shown on the precise day, recourse may be had to sales before or after the day, and for that inquiry, a reasonable range in point of time is allowable." *Douglas v. Merceles*, 25 N. J. Eq. 147; *Dana v. Fiedler*, 12 N. Y. 40.

If the stock has no ascertainable market value then the actual or intrinsic value must be taken as the basis. This value may depend on many facts and circumstances, such as the value of the property and assets owned; the dividends paid; the character and pernancy of the business; the control of the stock; the management; the markets for articles produced, if a manufacturing concern, and other facts. The evidence would necessarily take a broad range and would properly be admissible to prove any fact calculated to affect the value. *Hewitt v. Steele*, 118 Mo. 474; *Trust, etc., Co. v. Home Lumber Co.*, 118 Mo. 461; *Glover v. Holliday*, 109 Mo. 108.

II.  The stock of this corporation was not listed and only two sales were shown to have been made. Prior to the final settlement one share was sold for $1,000.  It was shown that this share passed to the purchaser the controlling interest in the corporation and the sale can not therefore be taken as fixing the market value.  A sale of eight shares was make about two years after the settlement for $250 per share.  This sale was too remote from the date of the distribution of the shares by the administrator to fix a market value, at the time at which it should be taken.  It became necessary therefore to ascertain the intrinsic value of the stock.  On this theory the circuit court acted. Most of the errors assigned relate to the competency of evidence admitted by the court for the purpose of proving the value of the stock.

Geo. L. Edwards was permitted to testify as an expert, and, from the assets of the corporation, the character of the business, and its profits for preceding years, to give his opinion of the value of the stock.  This witness was a stock broker who had been engaged in business in the city of St. Louis for six years buying and selling stock of all kinds found on the market, including such as was not listed.  He had no personal knowledge of the stock in question.  The administrator objected to the evidence of this witness upon the ground that he was not qualified to give an opinion as an expert.

An expert is one who is possessed of peculiar and special knowledge upon a subject about which he is required to give an opinion.  The general rule is that witnesses must state facts and the conclusions must be drawn by the jury.  Opinion evidence is therefore only admissible when "the subject-matter of inquiry is such that inexperienced persons are not likely to prove capable of forming a correct judgment upon

it without such assistance." 7 Am. and Eng. Encyclopedia of Law, 490–494.

It is evident that no one could form an exact estimate of the actual value of this stock. The value depended on the business done by the corporation, and the business depended upon so many contingencies that no accurate calculation could be made. But it seems to me to be evident that a stockbroker who makes a business of calculating the value of the stock of all kinds of corporations must acquire from experience, a knowledge of the effect certain conditions will have upon the value, which is not possessed by inexperienced persons.

The opinion of this witness is only evidence of value, to be weighed with the other evidence in the case. The verdict must be the opinion of the court to which the question of fact in this case was submitted. The opinion can only have weight according to the superiority of the knowledge the witness possessed of the subject-matter over that of the judge. It may be conceded that this witness showed himself to possess but little knowledge of the value of this stock, that the court did not obtain from the other evidence, but we can not say that his information and means of judging were no better. We can properly assume that the court placed the proper estimate upon the evidence and was not unduly influenced by it. In the circumstances, we do not think the court erred in permitting this witness to give his opinion.

III. Objection was made to the admission in evidence of the sale of eight shares of stock some two years after the date at which the valuation should have been fixed. This evidence was not admitted with a view of showing the market value. For that purpose it was too remote. But it was shown that the value of the corporate assets, and the annual dividends earned,

varied but little for a number of years including that in which this sale was made. The sale afforded some evidence of the value as it was not shown to have been compulsory.

The par value was *prima facie* the actual value of the stock. The burden was on the administrator to show a greater value. *Trust, etc., Co. v. Home Lumber Co., supra.* The difficulty of showing the value of such stock is manifest. The very necessity of the case demanded the admission in evidence of every fact that would aid the court in its difficult task. The stock had neither a market value nor an intrinsic value above par, if based alone upon the actual value of its property. This sale was, in the circumstances, proper evidence to aid the court in determining the value. The court found the value of each share to be $375. It is evident, therefore, that this sale was only taken as a fact to be considered with other evidence and not as conclusive of value.

IV. The court was asked by the administrator to declare as a legal proposition that the appraisement of the stock by three householders appointed by himself was *prima facie* the actual value of the stock at the time. This was properly refused; such an appraisement if required by the administration law could only be regarded as binding on the administrator. It would stand in the nature of an admission against him. As against the distributees, it would be mere hearsay, and altogether inadmissible but for the statute which declares: "Inventories and appraisements may be given in evidence, but shall not be conclusive for or against any executor or administrator, but other evidence may be introduced to vary the effect thereof." R. S. 1889, sec. 85.

The purpose of an appraisement is to fix some basis upon which to charge the executor or administrator

with the trust property which comes into his hands. Bonds, stocks, notes, and accounts have a face value which is *prima facie* the amount with which these trustees are to be charged. There would seem to be no necessity for an appraisement of such property, and none is generally made. But if made, as between the trustees and the distributees, they could not change the *prima facie* value from that shown upon the face of the evidence of indebtedness.

V.   In conclusion, it may be said that the issue of fact in this case was tried by the court. The presumption is that the court, in weighing the evidence, was governed by correct rules of law. Hence it is held that the same rules of strictness are not enforced, on appeals, where the trial was by the court, as in cases where the trial was before a jury.  *McCullough v. Ins. Co.*, 113 Mo. 616.

The learned judge who tried this case gave, in the form of a declaration of law, the facts considered in ascertaining the value of the property. The court says:

"In determining the value, the court sitting as a jury will take into consideration as well the evidence of any sales of stock in said corporation, as the evidence of the dividends that have been earned upon the stock, and also the evidence of any peculiarities of the business of the corporation such as its being based upon the manufacture and sale of a proprietary preparation, its want of machinery or other plant; any uncertainty as to the stability or permanency in a business of that character and all other facts in evidence in so far as they bear on the question of the value of the said one hundred and eighty shares of stock for sale in the market. In considering the evidence of sales made the court will also consider and give due weight to the facts in evidence, satisfying the court that in any case

more or less than the fair value of the stock was obtained.

"In considering the evidence as to dividends earned upon the stock, the court sitting as a jury will bear in mind that it is not ultimately the amount of said dividends that is to be ascertained, but they are to be found from the evidence and considered only so far as they may aid the court in determining the market value of the stock as above defined. And if the court find from the evidence, that notwithstanding the dividends earned, that there is any peculiarity about the stock in question or the property and business represented by it that makes said dividends considered by themselves an unsafe criterion to determine the value of the stock, then the court will draw only such conclusions from such dividend earned as to the value of the one hundred and eighty shares of stock as the same fairly justify when taken and considered together with all the other evidence bearing on said question of value, that is to say, the court in determining the value of the stock will only weigh and consider all the facts in evidence, and not one fact or set of facts exclusively."

It seems to us that the court took an intelligent, just, and practical view of its duties in determining the questions before it. The judgment is affirmed. All concur.