## O. R. FEGAN, Respondent, v. DUVALL SEED & GRAIN SEPARATOR COMPANY, Appellant.

Kansas City Court of Appeals, February 10, 1902.

1. **Sales:** DAMAGES: MARKET VALUE: EVIDENCE: INSTRUCTION.   Market value is generally a convenient and safe way to ascertain the real value, but it is not the only means; and the evidence is reviewed and held insufficient to support an instruction on the market value as a measure of damages for failure to deliver certain machines as contracted.

2. ——: ——: PLEADINGS: INSTRUCTIONS.   A contract provided that certain machines to be delivered should be of the same quality and make as the sample.   The petition counting in damages for a breach only complained of the machines not being furnished with certain kinds of screens as agreed.   The instruction submitted the question of the quality and make of the machines.   *Held,* the instruction introduced an issue which was not made by the pleadings.

3. Parties: DEFECT OF: DAMAGES: CERTAINTY OF. The question of the defect of parties is relegated to await the results of a new trial; and it is suggested that the indefiniteness and uncertainty on the question of damages should be remedied at such trial.

Appeal from Jackson Circuit Court.—*Hon. Edwin A. Krauthoff*, Special Judge.

REVERSED AND REMANDED.

*Wallace, Wallace & Culbertson* for appellant.

(1) The court erred in instructing the jury that the measure of damages for the failure to deliver the one hundred and eighty-six machines not delivered was the reasonable market value of the said machines at the place of delivery, and in refusing to give defendant's instruction No. 10, to the effect that plaintiffs were not entitled to recover for the said one hundred and eighty-six machines more than their actual value. There was not only no evidence of market value of the machines in question at the place of delivery, but the evidence showed that the machines had no market value in Oklahoma, as supposed in the instruction. 1 Sedgwick on Damages (8 Ed.), pp. 243, 244, 255; Murray v. Staunton, 99 Mass. 345; Moffit v. Hereford, 132 Mo. 513; Greer v. Bank, 128 Mo. 575; State v. Walker, 119 Mo. 467; Cooley v. Railroad, 149 Mo. 495; Vanstone v. Hopkins, 49 Mo. App. 389; Cobb v. Whitsett, 51 Mo. App. 146; Railroad v. Dawley, 50 Mo. App. 488; Bush v. Fisher, 85 Mo. App. 1. (2) The court also erred in its instructions, in permitting a recovery against the defendant, if the jury should find that the machines were not of the same quality and make as the machines exhibited at Guthrie, for the reason that it was not charged in the petition, nor was there any evidence at the trial, that the machines exhibited at Guthrie were not of such quality and make.

*John C. Tarsney* and *Paxton & Rose* for respondents.

(1)   The actual sale of five or six machines made a market value.   It was not necessary that there should have been a great number of sales.   Parmenter v. Fitzpatrick, 135 N. Y. 196; Esch v. Railroad, 72 Wis. 229; Lawrence v. Boston, 119 Mass. 126.   The making of thirty or forty sales at the county fairs by sample was evidence of market value.   (2)   The screens in the sample machine were part of its quality and make, and their absence from the machines delivered made them not of the same quality and make.

ELLISON, J.—This is an action for breach of contract in failing to deliver certain machines in the Territory of Oklahoma.   The judgment in the trial court was for plaintiffs.

It appears that defendant owned certain letters patent for a machine known as "Seed and Grain Cleaner," and that by the contract sued on, plaintiffs were appointed sole agents for the Territory of Oklahoma to sell the machines.   It was further stipulated in the contract that plaintiffs were to purchase $7,500 of the stock of the defendant company, and that defendant agreed that it would deliver to plaintiffs, at points in Oklahoma by them designated, three hundred machines "same as a sample now on exhibition in Guthrie."   That plaintiffs then ordered three hundred machines of defendant and designated the places in Oklahoma where they should be delivered. It further appears that defendant only delivered one hundred and fourteen machines and these were not up to the sample, in that the sample had six screens for separating six different kinds of grain, while those delivered had only one, and that the machines were delivered too late for sale for the season for which they were ordered.

One of the chief points in controversy at the trial was the question of the amount of damage sustained by plaintiffs by reason of the non-delivery of machines and by reason of

the deficiency of those which were delivered. In this connection the court instructed the jury for plaintiffs, that they should estimate the "market value of the machines which the jury may find defendant was bound to deliver at the time and places it was the duty of defendant to deliver and which defendant failed to deliver. To this will be added the difference, if any, in the value of the machines actually delivered at the time when delivered, and their value if they had been of the same quality and make as the sample separator referred to by the witnesses."

The objection made is that there was no evidence upon which to base the instruction, in that there was no evidence of a market value of the machines in Oklahoma. It was shown that there had been a sale of five or six of the machines in the Territory, at prices "ranging from fifteen to twenty-two dollars and a half." Upon that showing plaintiffs justify the instruction; contending that, "The actual sale of five or six machines made a market value." And that "it was not necessary that there should have been a great number of sales."

Without going into the question of what number of sales it would take to establish a market value of an article, it is sufficient to say of the case, as presented, that the evidence is altogether too indefinite and vague upon which to base an instruction directing the jury to find a market value. The three hundred machines which plaintiffs contracted for were to be delivered at different places in Oklahoma as designated by plaintiffs. The machines delivered were delivered at different places, and those not delivered were subject to be delivered at any point selected by plaintiffs. The failure to deliver would make necessary an inquiry of value at that place. So, therefore, on the theory of it being necessary to show a market value, that value should be the value at the place of delivery.

Where the machines were sold does not appear. Nor is there any data in evidence whereby any one could tell that the machines not sold were of the same market value at the

different places of delivery, as were the five or six which were sold. The truth is, the case, in the condition in which it is presented in the record, is not one justifying the fixing of value by the market. The market value is generally a convenient and safe way to ascertain a real value, but it is not the only means. Frequently an article of property has not been sufficiently bartered and sold to have a market price, or a market value; in such case its value must be shown in some other way. Moffitt v. Hereford, 132 Mo. 513; State v. Walker, 119 Mo. 467; Cooley v. Railroad, 149 Mo. 495; 1 Sedgwick on Dam., sec. 250; Murray v. Staunton, 99 Mass. 345. The instruction should not have been given.

The contract was that the machines should be the "same as sample on exhibition at (the city of) Guthrie." The court in instructions numbered one and three, for plaintiffs, submitted an issue of whether the machines shipped were of the same "quality and make" as the machine on exhibition at Guthrie. These instructions are within the meaning of the contract, but the trouble with them is that no such issue was tendered by the pleadings. The petition makes no complaint of the quality and make of the machines. It only complains of them not being furnished with the screens for different kinds of grain, as agreed upon. Failing to furnish the number of screens agreed upon has nothing to do with the quality and make of the machine. The effect of the instructions was to introduce an issue into the case which was not made. It was error.

A point is made of defect of parties plaintiff. That some of them appearing as parties plaintiff had not authorized the suit. As the cause is to be retried, the facts as to these points can be clearly and definitely ascertained and the consequences proper may be applied.

Other points are suggested against the judgment, but counsel have not attached sufficient importance to them to cite

authorities.   We are therefore inclined to pass them by with-out being committed one way or the other.

The record here makes it proper for us to remark that there is too much indefiniteness and uncertainty on the question of damages.   The case is for money compensation and no rea-son is seen why the matter, as to the amount of damages claimed by plaintiffs, should not be put in such shape by the pleading and evidence as that they can be easily estimated and understood.

The judgment is reversed and the cause is remanded. All concur.