## HENRY v. NORTH AMERICAN RY. CONST. CO

(Circuit Court of Appeals, Eighth Circuit.   November 29, 1907.)

No. 2,571.

1. DAMAGES—MEASURE OF DAMAGES—BREACH OF CONTRACT TO DELIVER BONDS.

The measure of damages for breach of a contract to deliver bonds of a corporation, the consideration for which has been paid, is the value of the bonds at the time they should have been delivered under the contract, with interest, and such value is prima facie their face value.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Damages, §§ 344–350.]

2. EVIDENCE—HEARSAY—MARKET VALUE—EVIDENCE OF SALES.

Where the bonds of a corporation have been sold in market, or there is an established demand therefor, this may be shown as a means of fixing their value in measuring the damages for breach of contract by nondelivery, but such market value is not conclusive, and it may be shown that their real intrinsic value is either greater or less, and where there is no established market value, the real value is to be ascertained from such elements of value as are obtainable.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, §§ 1214–1216.]

3. DAMAGES—CONSTRUCTION OF CONTRACT.

Where a contract provided that plaintiff should receive for doing certain work "the sum of sixty-five hundred dollars, said sum to be paid * * * in the first mortgage bonds" of a corporation, and there was a failure to deliver the bonds, plaintiff is not entitled to recover, as the expressed value of the work, the sum of $6,500 in money, regardless of the value of the bonds.

4. SAME.

An action to recover damages for breach of a contract to deliver a certain amount in face value of the bonds of a corporation is not one for fraud, and plaintiff is not entitled to recover the face value of such bonds because the defendant may have caused the corporation to issue bonds for an amount largely exceeding the value of its assets, but the only issue, where the nondelivery is admitted, is as to the value of the bonds at the time they should have been delivered.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Damages, §§ 344–350.]

In Error to the Circuit Court of the United States for the District of Colorado.

K. C. Schuyler (W. F. Schuyler, on the brief), for plaintiff in error.
Henry McAllister, Jr. (Vaile & Waterman, on the brief), for defendant in error.

Before SANBORN and VAN DEVANTER, Circuit Judges, and PHILIPS, District Judge.

PHILIPS, District Judge.   The plaintiff in error (hereinafter designated the defendant) entered into a contract with the defendant in error (hereinafter designated the plaintiff) for the construction of a street railway at Shawnee, Okl. T.   The stipulated amount of the cost of the work was $74,800.   There was to be paid in cash $34,800.   The balance of $40,000 was to be paid upon the completion of the work by 20 of the first mortgage 5 per cent. gold bonds of the Shawnee Trac-

tion Company, each for the principal sum of $1,000, guaranteed by the Shawnee Light & Power Company as to the payment of interest, and by certificates representing $20,000 of the capital stock of said traction company. There was a supplemental contract afterwards entered into between the parties for doing some additional work "for the sum of sixty-five hundred dollars ($6,500), said sum to be paid immediately upon completion of the extension aforesaid, in the first mortgage bonds of the Shawnee Traction Company, at their face value, and in addition to said bonds, an equal amount ($6,500) of the full paid capital stock of the Shawnee Traction Company, said bonds and stock to be of the same description and issue as that to be given" under the former contract. The contract and undertaking of the construction company was fully performed. The contract price, in manner and form as prescribed in the contract, was fully paid with the exception of the $6,500 of the first mortgage bonds under the supplemental contract. Demand for and refusal to deliver the bonds according to the contract constitute the basis of this suit. The answer admitted that the $6,500 of bonds had not been delivered, but denied that any sum was due plaintiff by reason of the matters complained of.

It being conceded that the plaintiff had fully performed its undertaking, but the defendant had failed to keep and perform his contract by delivering to the plaintiff the $6,500, face value of bonds, in the action for breach of contract the essential question is: What is the measure of damages? The answer the law makes is: The value of the bonds at the time they should have been delivered under the contract. Prima facie the amount expressed upon the face of the bonds is the value thereof. 3 Sutherland on Damages (3d Ed.) p. 1921; 2 Clark & Marshall on Corporations, p. 1170; Moffit v. Hereford, 132 Mo. 513, 34 S. W. 252; Menkins v. Menkins, 23 Mo. 252, 253; Meixell v. Kirkpatrick, 29 Kan. 679, 685; Potter v. Merchants' Bank, 28 N. Y. 641, 86 Am. Dec. 273; Baldwin v. Central Savings Bank, 17 Colo. App. 7, 67 Pac. 179; Express Company v. Parsons, 44 Ill. 312–317; Hersy v. Walsh, 38 Minn. 521, 38 N. W. 613, 8 Am. St. Rep. 689.

When, therefore, the plaintiff had shown that the defendant had failed to deliver the bonds in question when they should have been delivered, it had made out a prima facie case entitling it to judgment for the face value of the bonds, with interest from date of default. The defendant then assumed the laboring oar to show, if he could, that the actual value was less. At the threshold of his undertaking to do this, the objection was interposed on behalf of the plaintiff that the only criterion for ascertaining this fact was the market value of the bonds. As the evidence showed that at that time the bonds had acquired no market value, the court ruled that the plaintiff was entitled to judgment for their face value, with interest. This was error. Where a given article or commodity, or stocks and bonds of an association or corporation, have been sold in market, or there is an established demand therefor, this may be shown as a means of fixing the value in measuring the damages for breach of contract for nondelivery. This for the reason that, if they can be bought in the market, the vendee or person entitled to them can thereby "replace himself"; but even this

market value may not be conclusive in the sense of a conclusive legal presumption.  "It stands as a criterion of value because it is a common test of the ability to purchase the thing.  In such cases, what is called the 'market price,' or the quotations of the articles for a given day, is not the only evidence of value.  The true value may be drawn from other sources."  3 Sutherland on Damages (3d Ed.) p. 1894; Sedgwick on Damages (8th Ed.) § 250; 2 Cook on Corporations (4th Ed.) § 581; Colebrook on Collateral Securities (2d Ed.) 546; 2 Clark & Marshall on Private Corporations, p. 1170.

The bonds, having acquired no market value, did not, however, leave the defendant helpless.  Resort in such contingency may be had to other sources of information for ascertaining the actual value.  The plaintiff would have the right to show that the real intrinsic value of the bonds exceeded their face or market value; and the defendant, in the absence of any established market value, would have the right to show that the real value was less than that called for on their face. "In such cases the real value is to be ascertained from such elements of value as are obtainable."  Murray v. Stanton, 99 Mass. 345; Freon v. Carriage Company, 42 Ohio St. 30, 38, 51 Am. Rep. 794; 2 Cook on Corporations (4th Ed.) § 581; 2 Clark & Marshall on Private Corporations, 1170; Jonas v. Noel, 98 Tenn. 440, 444, 39 S. W. 724, 36 L. R. A. 862; Trust & Savings Company v. Home Lumber Company, 118 Mo. 447, 24 S. W. 129; Greer v. Lafayette County Bank, 128 Mo. 559, 577, 30 S. W. 319; Moffit v. Hereford, supra; Redding v. Godwin, 44 Minn. 358, 46 N. W. 563; Industrial & General Trust Company v. Tod, 180 N. Y. 215, 231, 73 N. E. 7; Griggs v. Day, 136 N. Y. 162, 32 N. E. 612, 18 L. R. A. 120, 32 Am. St. Rep. 704; Crichfield v. Julia, 147 Fed. 65, 77 C. C. A. 297; Nelson v. First National Bank, 69 Fed. 798, 16 C. C. A. 425.

The defendant sought to introduce evidence for the purpose of minimizing the value of the bonds.  As this line of proof was cut off by the ruling of the Circuit Court, on the ground that the only criterion for ascertaining the value of the bonds was their market value, we do not feel called upon to discuss and pass upon the character of proof offered by the defendant as to its competency and relevancy.  Some of the questions put to the witnesses may have been objectionable. But, as it cannot be known whether or not, on another trial, the defendant will reoffer all or any of such testimony, until the trial court has ruled on the question of their relevancy and admissibility any discussion of the suggested proof at this time might be merely academic. In some of the authorities above cited will be found outlines of the character of proof on such issue, which may be a guide to the trial court on further hearing.

With ingenious force, the learned counsel for plaintiff makes contention that a correct exposition of the contract entitled him to the payment of $6,500 in money, as the expressed value of the work, and that he is not limited to the bonds in kind.  This contention cannot be sustained.  While the contract stated that the consideration was "the sum of sixty-five hundred dollars," it expressly stipulated that "said sum to be paid immediately upon the completion of the extension afore-

said in the first mortgage bonds of the Shawnee Traction Company at their face value." This was an express prescription as to the thing in which the bonds were to be paid. If at the time the bonds became demandable their actual value had been $10,000, it would doubtless be deemed by counsel for the plaintiff as rather audacious for the defendant to come into court and tender 65 bonds in discharge of his obligation when their value had shrunk to $5,000. The plaintiff would have the right to reply: "Non hæc in foedera veni." He would be entitled to demand, because such is the letter of his contract, the bonds or their value at the time they should have been delivered. It is to be borne in mind that the plaintiff had received $6,500 of the capital stock of the company, which was a part of the consideration for the work done under the supplemental contract. If, in addition thereto, the plaintiff is to have payment in cash to the amount of $6,500 on the contention of its counsel that the contract so meant by the expression "for the sum of $6,500," the result would be that the plaintiff would get for his work and material, not only the cash value thereof, but, in addition thereto, $6,500 "of the full paid capital stock of the Shawnee Traction Company." Reason and authority are against this contention. Cleveland & P. R. Co. v. Kelley, 5 Ohio St. 180; Johnson v. Dooley, 65 Ark. 71, 44 S. W. 1032, 40 L. R. A. 74; Eastern Railroad Company v. Benedict, 10 Gray (Mass.) 212; Rutan v. Hinchman, 29 N. J. Law, 112.

The final contention of counsel for the plaintiff is that, it appearing from the whole record that the directed verdict on behalf of the plaintiff is justifiable on other ground than that assumed by the trial court, the judgment should be affirmed. This contention is predicated of a statement made by defendant's counsel in seeking to introduce evidence to show that the actual value of the bonds was less than their face value. Inter alia, counsel for defendant, in stating what he proposed to show by the defendant Henry, said:

"Further, that at the date, to wit, May 26, 1904, the Shawnee Traction Company had an authorized bond issue under its first mortgage of $250,000 of bonds, of which $150,000 were outstanding, and that the plant of the company at that time, subject to the mortgage and bonds, including franchise and all assets of the company, did not exceed in value the sum of $35,000."

The argument is that as the defendant had not only agreed to deliver so many bonds, but full paid stock of the company, the plaintiff company had the right to assume that the bond issue would bear an honest, equitable relation to the capitalization and the value of the property; and therefore it does not lie in the mouth of the defendant, who was the president and active promoter of the traction company to escape liability to the plaintiff by showing that he had issued $250,000 of first mortgage bonds, of which $150,000 were outstanding, when the plant, etc., did not exceed in value $35,000. In support of this contention the case of Crichfield v. Julia, 147 Fed. 65, 77 C. C. A. 297, is cited. While the court in that case held that it was to be presumed the parties had in mind a substantial value in making a contract for $100,000 of preferred stock, yet it was simply to answer an argument that the preferred stock could have had no value because it was never issued or provided for in the organization of the

company, and that the defendant Crichfield purposely omitted to provide for the issuance, and therefore the presumption that it was of par value was rejected by the court. And in its instructions throughout the jury were told it was for them to find the value of the $100,000 of preferred stock, based upon the best evidence obtainable. That is not this case. The contract declared on is a single common law action to recover damages for nondelivery of a given number of "first mortgage bonds." It is not an action on the case for the recovery of damages resulting from an actual fraud on the part of the defendant by reason of an overissue of bonds to the plaintiff's injury. Moreover, the proof sought to be made, as indicated by the defendant's offer, was simply that the company had an authorized issue of $250,000 of first mortgage bonds. It did not appear that such amount had been issued; and the proof offered was merely to show that at the time when the bonds due the plaintiff became deliverable, the value of the property to secure the bonds did not exceed $35,000. Under the issue made on the pleadings the only question for judicial ascertainment is: What was the actual value of the $6,500 of bonds of the first mortgage class at the time they should have been delivered; and not whether the traction company had defrauded the plaintiff by an overissue of bonds.

It results that the judgment of the Circuit Court must be reversed, and the cause remanded, with directions to grant a new trial.