## JOSEPH S. WELLS ASS'N v. HELVERING, Com'r of Internal Revenue.

### No. 6121.

Court of Appeals of the District of Columbia.
Argued April 6, 1934.

Decided May 28, 1934.

James S. Y. Ivins and Percy W. Phillips, both of Washington, D. C., for appellant.

Sewall Key, E. Barrett Prettyman, Bernard D. Hathcock, J. L. Monarch, and Louise Foster, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

VAN ORSDEL, Associate Justice.

Appellant company is seeking to set aside a determination of a deficiency of $177.54 found against it by the respondent, Commissioner of Internal Revenue, in income tax for the year 1928; and in addition thereto to recover an alleged overpayment of tax for that year in the amount of $2,475.27.

Appellant is a Utah corporation, organized by the heirs of one Joseph S. Wells, for the purpose of holding and administering certain securities owned by him at the time of his death, with the principal office and place of business in Salt Lake City, Utah. Appellant company owned stock in the Bennett Glass & Paint Company, in the Ogden Gasoline & Oil Company, in the Bennett Gasoline & Oil Company, and in the Ogden Glass & Paint Company. The Bennett Glass & Paint Company and the Bennett Gasoline & Oil Company were operated from Salt Lake; the Ogden Gasoline & Oil Company and Ogden Glass & Paint Company were operated from Ogden.

John Bennett and W. R. Wallace were the two largest stockholders in these four companies. The Bennett Glass & Paint Company engaged in a gasoline and oil business, which the Bennett Gasoline & Oil Company was organized to take over. John Bennett was president and manager of the paint company; and Will Bennett was the manager of the gasoline and oil company. Will Bennett died in 1927, and John Bennett suffered a nervous breakdown. W. R. Wallace owned stock in each of these companies, and his son took over active operation of the gasoline business. Both the Bennett and Wallace families were interested in the Ogden companies. In 1928 it was agreed that appellant company and the Bennett family would take over all the stock of the Bennett Glass & Paint Company; and the Wallace family would take all the stock of the other three companies.

During the period from 1916 to 1924, appellant company acquired stock in the two Ogden companies, and the Bennett Gasoline & Oil Company, at a total cost of $10,500. In the year 1928, it exchanged the stock it had acquired in the three companies, and $53.10 in cash, for 288 shares of stock in the Bennett Glass & Paint Company, and $1,479.53 in cash.. In 1928 appellant company, in its tax return, reported a profit on this exchange of $23,142.90, and in its schedule noted: "Received in exchange Bennett Glass & Paint Company stock at trading price of $117.00 per share."

The Commissioner accepted the return of the valuation of 288 shares of Bennett Glass & Paint Company stock at $117 per share, and determined a deficiency of $177.54 as the tax on the $1,479.54, which had been received in addition to the 288 shares of stock, and which appellant company had failed to include in its return. As no return seems to have been made of the $1,479.53, received in cash in the trade, the item of $177.54, found as a deficiency, may be regarded as properly disposed of in the decision of the Board.

The sole question left for consideration, therefore, relates to the fair market value of the 288 shares of Bennett Glass & Paint Company stock which the appellant company received in the exchange made in 1928.

Section 111 (a) of the Revenue Act of

1928 (26 USCA § 2111 (a) provides: "The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the basis provided in section 113 [section 2113]." Section 111 (c) of the same act (26 USCA § 2111 (c) provides: "The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received." Section 113 (26 USCA § 2113) provides that the basis for determining gain from the sale or other disposition of property acquired after February 28, 1913, shall be the cost.

It appears from the testimony that the Bennett Glass & Paint Company had 6,000 shares of stock of the par value of $100 each, or a total capitalization of $600,000; that the earnings of the corporation for the period from 1923 to 1928, inclusive, had been approximately $7 per share, or $42,000 a year; that the corporation had paid dividends of 6 per cent. or $36,000 per annum upon the capital stock from the year 1923 to 1928, inclusive; that when appellant company received the stock of the Bennett Glass & Paint Company, the corporation lost or surrendered its business connection with the Bennett Gasoline & Oil Company, which had produced a gross profit of between $40,000 and $50,000 per year; that it saved by reason of the loss of this business, in salaries and expenses, between $14,000 and $15,000 per year; that there never had been any sales of the stock of the Bennett Glass & Paint Company from the year 1900 to the year 1928, inclusive; and that the stock of the corporation had been held during all of that time in the hands of a very few people, almost exclusively by the Bennett and Wallace families. On this statement of facts appellant company produced two witnesses, who testified that the market value of the 288 shares would not be over $25.00 or $30.00 per share.

█ It is contended by counsel for appellant that the Board erred in refusing to accept the uncontradicted evidence of these witnesses as conclusive of the issues involved in this case. We agree with the Board, however, that the testimony of these witnesses is not uncontradicted. On the contrary, it is met by the tax return of appellant company in 1928, placing a trading value on this stock of $117 per share; met by the earning capacity of this stock during the years immediately prior to and including 1928; met by the fact that none of this stock had been sold in 28 years; and also met by the fact that no evidence was adduced showing the value of the assets and good will of the corporation as bearing upon the value of the stock. These were proper facts and elements to be considered by the Board in determining the fair market value of the stock.

█ The burden rested upon appellant company to overcome by competent and sufficient evidence the valuation fixed by the Commissioner. Botany Worsted Mills v. United States, 278 U. S. 282, 49 S. Ct. 129, 73 L. Ed. 379. The valuation of $117 per share, as fixed by the Commissioner and approved by the Board, must be regarded as prima facie correct until overcome by substantial evidence. Wickwire v. Reinecke, 275 U. S. 101, 48 S. Ct. 43, 72 L. Ed. 184; United States v. Mitchell, 271 U. S. 9, 46 S. Ct. 418, 70 L. Ed. 799; United States v. Anderson, 269 U. S. 422, 46 S. Ct. 131, 70 L. Ed. 347.

█ There are two recognized methods of ascertaining "market value." The price may be established in the case of corporate stocks by showing the standardized price which it has in a market where it is dealt in by many persons, and in a large number of transactions. A different rule, however, must be applied where, as in the present case, no stock had been sold for a period of twenty-eight years, and there is no method afforded of establishing its standardized price in any market where the stock has been sold. In these circumstances it is competent to treat the subject in a figurative sense to determine the fair or reasonable value the stock would have if it were placed upon the general market. To establish "market value" in the figurative sense, evidence of individual transactions, the earning capacity of the stock, the location of the corporation, the annual output of the corporation, its value, the uses to which the product of the corporation can be put, and any other elements, are admissible to show the fair and reasonable value of stock which has not been on the market in such manner as to give it a market value in the primary sense of the term. North American Telegraph Co. v. Northern Pacific Ry. Co. (C. C. A.) 254 F. 417.

In the case of Virginia v. West Virginia, 238 U. S. 202, 35 S. Ct. 795, 800, 59 L. Ed. 1272, the court had under consideration the valuation of a large block of railroad stock owned by the state of Virginia. Evidence of two sales and quotations on the stock were before the court of a date more than fifty years prior to the consideration of the case. The court, after reviewing the very meager

evidence, said: "In short, we have very infrequent transactions, of unknown significance, which fall short of furnishing a satisfactory indication of the value of the large block of stock held by the state. The fact, however, that there was no sufficient proof of market value, was not an insuperable obstacle to the making of a fair valuation. It was clearly proper to introduce evidence tending to show the intrinsic value of the shares. Nelson v. First National Bank, 16 C. C. A. 425, 69 F. 798, 803, 32 U. S. App. 554; Crichfield v. Julia, 77 C. C. A. 297, 147 F. 65, 73; Henry v. North American Construction Co., 85 C. C. A. 409, 158 F. 79, 81; Murray v. Stanton, 99 Mass. 345; Industrial Trust, Ltd., v. Tod, 180 N. Y. 215, 232, 73 N. E. 7; State v. Carpenter, 51 Ohio St. 83, 37 N. E. 261, 46 Am. St. Rep. 556; Redding v. Godwin, 44 Minn. 355, 46 N. W. 563; Moffitt v. Hereford, 132 Mo. 513, 34 S. W. 252. For this purpose, resort was had to corporate accounts and reports of the company's affairs."

The mere loss of revenue is not of itself sufficient to show lack of value. Before the loss of revenue alone can be considered, additional items are essential, tending to show the general business set-up of the corporation. This includes the value of the assets of the company, the stock of which was surrendered, the terms of the agreement under which this stock was surrendered, the liabilities of the company, and the amount, if any, of its surplus, and the value of its good will. All these are matters to be considered in determining profit or loss in the exchange of corporate stock.

It was incumbent, therefore, upon appellant to support the opinion evidence of low market value given by its witnesses by any other available facts that would tend to establish the price named as a fair market value. "Where value is an issue, the inquiry may properly be allowed to take a wide scope. Evidence of the cost, selling price, replacement value, depreciation, use value, junk value, location of the property, local demand for it, and many other things may be shown. Many elements properly enter into the determination of 'fair value,' and evidence bearing on the question may be admissible, although it may have but little weight." Hard & Rand v. Biston Coffee Company (C. C. A.) 41 F.(2d) 625, 627.

Considering the case as presented, we are not prepared to say that the evidence adduced by appellant company before the Board of Tax Appeals was insufficient to support the decision of the Board; and especially in view of the rule, binding upon the courts, that where there is substantial evidence to support the findings of fact arrived at by the Board, and upon which its decision is based, the decision will not be overruled. Henderson Iron Works v. Blair, 58 App. D. C. 114, 25 F.(2d) 538.

The decision of the Board is affirmed.