(Opinion published 52 N. W. Rep. 909.)

---

## Louis T. Stensgaard *vs.* St. Paul Real Estate Title Ins. Co.

Argued June 16, 1892.   Decided July 12, 1892.

### Statements in Application for a Policy made Warranties.

Where a policy of insurance provides that any untrue answers to questions contained in the application shall avoid the policy, the answers amount, in effect, to a warranty, and the matter of their materiality is not open.

### Question and Answer to it Construed to be a Warranty.

The policy being one insuring title to real estate, one of the questions in the application was, "Last price paid?" and the answer was, "$11,000."

*Held*, that the question called for the actual, and not merely a nominal, price,—of the price in money or money's worth,—and it appearing that although the consideration stated in the deed was $11,000 the transaction was really a trade of mining stock of little value, and $3,000 for the land, an instruction that if $3,000 and the market value of the stock amounted to $11,000, or that the insured honestly believed he was paying $11,000 cash value, and the grantor accepted it as that amount in money, they should find the answer true, was sufficiently favorable to the insured, in an action on the policy.

### Corporate Stock—Presumption of Value.

There is no presumption that the stock of a corporation is worth par.

### Amendment of Pleading on the Trial Discretionary.

*Held*, that the refusal of the trial court to permit an amendment of a pleading was not an abuse of discretion.

### What Questions Shall be Submitted to Jury Discretionary.

In an action for the recovery of money, what questions of fact shall be submitted to the jury for specific findings is in the discretion of the trial court.

### Consent to Try Counterclaim not Due.

Where the answer set up a counterclaim upon a note of the plaintiff not due at the time of the trial, and no objection is made that it is premature, but the case is tried throughout, including the charge of the court, not excepted to, on the theory that it is a proper counterclaim, the plaintiff must be held to have waived the objection that the note was not yet due.

Appeal by plaintiff, Louis T. Stensgaard, from a judgment of the District Court of Ramsey County, *Kelly*, J., rendered May 6, 1891, against him for $5,097.79 on a counterclaim.

A stranger on June 21, 1889, falsely representing himself to be August Uihlein of Milwaukee, Wis., sold and conveyed to plaintiff, block twenty-two (22) in Auerbach & Hand's Addition to St. Paul, and obtained therefor $3,000 in money and some stock, of very little value, in the Gogebic and Lochiel Mining Companies. On the next day plaintiff mortgaged the block of land to W. W. Jennings to secure the payment of his note for $4,500, due three years thereafter, with eight per cent. interest payable semiannually, in exchange on New York. He then on June 24, 1889, obtained of defendant "The

St. Paul Real Estate Title Insurance Company" its policy whereby, in consideration of $65, it insured him and his heirs and grantees for twenty-five years against loss or damage not exceeding $10,000 which he or they might or should sustain by reason of defects then in the title to the property. This policy was assigned to Jennings as collateral security for the payment of the loan. The policy provided that the statements in Stensgaard's application for the policy should be warranties of the facts therein stated, save as against a mortgagee without notice. The application contained this question: Q. "Last price paid for the property? Ans. $11,000."

The stranger was not Uihlein, and the deed to plaintiff was a forgery. The Title Insurance Co. paid Jennings and took an assignment of his note and mortgage. Plaintiff brought this action on the policy, claiming $10,000 less the mortgage. Defendant, to avoid the policy, relied on the falsity of the answer as to last price paid, and it made counterclaim of the plaintiff's note to Jennings not yet due. This counterclaim was tried at this time by consent. Defendant had a verdict for its counterclaim, and judgment having been entered, plaintiff appealed.

*Willis & Nelson*, for appellant.

The representation was true. The "last price paid for the property" was eleven thousand dollars. Stensgaard paid for the property, not in cash wholly, but partly in cash and partly in stock. Defendant did not ask him any questions as to the mode of payment of the last price paid. The answers of the plaintiff, according to the terms of the written application for insurance, were not positive statements, but scarcely more than expressions of opinion. The application for the policy reads: "It is agreed that the following statements are correct and true to the best of the applicant's knowledge and belief." These qualified statements when made by the terms of the policy a part of the contract expressed by such policy, are imported into it with all the qualifications attached. May, Ins. § 161; *Redman* v. *Hartford Fire Ins. Co.*, 47 Wis. 89.

A false statement in order to avoid a policy of insurance, must have been designedly untrue. *Mechler* v. *Phœnix Ins. Co.*, 38 Wis.

665; *Elliott* v. *Hamilton Mut. Ins. Co.*, 13 Gray, 139; *Fitch* v. *American Popular Life Ins. Co.*, 59 N. Y. 557; *Franklin Fire Ins. Co.* v. *Vaughan*, 92 U. S. 516; *Hemmer* v. *Cooper*, 8 Allen, 334.

The court below excluded testimony on the part of the plaintiff regarding the oral statements made by the plaintiff to the secretary of the defendant corporation, in answer to the questions contained in the printed and written application for insurance. This was error. The testimony was competent and of the utmost importance to the plaintiff. *Rowley* v. *Empire Ins. Co.*, 36 N. Y. 550; *Kausal* v. *Minnesota Farmers' Mut. Fire Ins. Ass'n*, 31 Minn. 17; *Insurance Co.* v. *Wilkinson*, 13 Wall. 222; *Baker* v. *Home Life Ins. Co.*, 64 N. Y. 648; *Higgins* v. *Phœnix Mut. Life Ins. Co.*, 74 N. Y. 6; *New Jersey Mut. Life Ins. Co.* v. *Baker*, 94 U. S. 610; *Ring* v. *Windsor Co. Mut. Fire Ins. Co.*, 51 Vt. 563.

*H. F. Stevens* and *Lusk, Bunn & Hadley*, for respondent.

The question turns on a false answer of the plaintiff in his application for the policy. The verdict must be sustained, if at all, on the plaintiff's false representation of what he paid for the property. Title insurance, though novel to this court, is clearly to be controlled by the same rules of law as to representations, concealments, frauds and warranties, as fire or marine insurance, for the policy is purely a contract of indemnity. The ordinary rule applies that in this class of contracts the assured is bound to the highest degree of good faith. A large risk is assumed for a small premium in reliance on the representations and warranties of the assured. The policy refers to the application as being the basis of the insurance and the applicant agrees that the statements therein are true to the best of applicant's knowledge and belief, and that any false statement or suppression of material information avoids the policy. The plaintiff admits that he made the representation, and affirms that it was true; that he did pay $11,000. The jury found that it was false, and that Stensgaard knew it to be false.

It is not necessary to discuss whether the statement is a representation or a warranty. We treat it as a representation, and so the charge below treated it. When the parties have incorporated a

representation in the contract and agreed that the contract shall be void unless it is true, the only question remaining is, whether or not it is true.   If the covenant is that it is true to the best of the applicant's knowledge and belief, there are two issues and two only : first, whether it is true; second, whether, if false, the applicant believed it to be true.   Both these issues were submitted to the jury, and, on ample evidence, both were found against the plaintiff.   If these issues were fairly and correctly defined to the jury, that ends the case. *Price* v. *Phœnix Mut. Life Ins. Co.*, 17 Minn. 497, (Gil. 473;)  *Campbell* v. *New Eng. Mut. Life Ins. Co.*, 98 Mass. 381;  *Wilson* v. *Conway Fire Ins. Co.*, 4 R. I. 141;  *Conover* v. *Massachusetts Ins. Co.*, 3 Dill. 217;  *Jeffries* v. *Life Ins. Co.*, 22 Wall. 47;  *Ætna Life Ins. Co.* v. *France*, 91 U. S. 510;  *Anderson* v. *Fitzgerald*, 4 H. L. Cas. 494; 1 May, Ins. § 185.

Statements by a vendor, of the price he paid for property, are not opinions, but statements of fact, and if knowingly false, may give the vendor an action for deceit.   Leake, Contracts, 355;  *Van Epps* v. *Harrison*, 5 Hill, 63;  *Hickey* v. *Morrell*, 102 N. Y. 454;  Benjamin, Sales, (Bennett's Ed. 1888,) 449;  1 Bigelow, Fraud, 492.

Now when a man is asked what he paid for property, with a view of assuring him that his title is good, and he has really paid nothing, but has passed worthless property upon his vendors, who took it believing it to be good, is it an honest answer for him to say he paid eleven thousand dollars ?   He is bound to answer honestly; and the question, whether this is an honest answer, appeals not to stores of legal learning, but to common sense of right and wrong.   If plaintiff had told the truth, his purchase would have been shown to be a swindle, a fraud on Uihlein; his title would have appeared to the Title Insurance Company as doubtful, his land as subject to recovery by Uihlein.   No one would insure such a title and thereby guarantee the applicant the fruits of his own fraud.   He cannot make such an answer as he gave, true or honest, by saying that he swindled his vendor and made him believe that the consideration was $11,000. It was not in fact $11,000, whatever the imaginary vendor was induced to believe.

GILFILLAN, C. J.   This is an action upon a policy issued to plaintiff, insuring the title to real estate.   The policy refers to a written application, and provides that "any untrue statement or suppression of a material fact affecting the title, or any untrue answer to questions contained in said above application, by the insured or his agent, shall avoid this policy, excepting as against a mortgagee not privy thereto."   The application contains this provision : "It is agreed that the following statements are correct and true, to the best of the applicant's knowledge and belief, and that any false statement or any suppression of material information shall avoid the policy." Then follow questions by the company and answers by the insured, among which was :   Question. "Last price paid for the property?" Answer. "$11,000."   The application was signed by the insured. The breach in the policy consisted in this.   The land belonged to one Uihlein, and immediately prior to the issuance of the policy the plaintiff purchased and received a conveyance from a person whom he supposed to be Uihlein, who, however, was not Uihlein, but falsely personated him and forged the deed, wherefore the plaintiff got no title.   The defense was based on the alleged falsity of the above answer, to the knowledge of plaintiff.   There is also a counterclaim based on allegations that after the policy issued the plaintiff issued to a *bona fide* mortgagee, not privy to the false answer, a note for $4,500, and a mortgage on the land to secure it, and as further security assigned the policy to such mortgagee, and that on discovering that plaintiff's deed was forged the defendant paid the note and mortgage, and the same were assigned by the holder to it.

The court below determined, in effect, as matter of law, that the above answer was material, and that, if plaintiff knew it to be false, it avoided the policy.   The plaintiff insists that it was not material, and that at any rate its materiality was a question of fact to be determined by the jury.   In the first place the answer to the question, "Last price paid?" was a statement of fact, and not the expression of an opinion, as a statement of value generally is.   In the second place the effect of falsity in the statements on the validity of the contract is not made to depend on the intent with which the statement

is made, as that the intent shall be fraudulent, but on whether true or false, to the best of the applicant's knowledge and belief. Where the contract itself does not stipulate the effect that a particular false statement or representation shall have on the contract, or where it stipulates merely that the misrepresentation or suppression of a material fact shall avoid it, the fact misrepresented or suppressed must have been material, as an inducement to enter into the contract; and as the materiality must be shown by matters outside the terms of the contract, it is a question of fact. But the parties may by their contract determine the materiality for themselves, as where they stipulate that if a statement of fact made by one of them, and set forth in the contract, be false, it shall avoid the contract. In such case the statement is in effect a warranty. Whether they have made the statement material, and in effect a warranty, is a question for the court, to be determined by an interpretation of the contract. The court below correctly decided the question in this case.

The "last price" referred to in the application, question and answer, was the price paid by plaintiff to the person who executed the deed to him. The question called for a statement of the actual, and not merely a nominal, price,—of the price in money or money's worth; and from the answer the defendant could understand nothing else but that the sum stated was the actual money price. The evidence of the plaintiff showed beyond dispute that in the deal with the person who personated Uihlein, and which resulted in the deed to plaintiff, no money price was agreed on; that it was not a sale for money or money's value, but that the plaintiff holding stock in a mining corporation to the amount, par value, of $15,000, but which, as the jury find, was of very little value in the market in St. Paul, where the transaction was had, and find also that plaintiff knew it was of little value, he transferred the stock and paid $3,000 in cash for the conveyance. The consideration stated in the deed was $11,-000,—at whose suggestion inserted, does not appear. The actual consideration was the stock, of little value, as plaintiff knew, and the $3,000. It is not a case, as plaintiff contends, of a price agreed on for the land, and a subsequent tender on the one part and accept-

ance on the other of property in lieu of money, in satisfaction of such price. It was a trade of the stock and the $3,000 for the land. The charge of the court that if the $3,000 and the fair market value of the stock in the St. Paul market aggregated $11,000 the jury must find the answer in the application true, and that if, from the evidence, they believed that plaintiff did not know the stock to be of little value, and that he honestly believed he was paying $11,000 in full cash value, and that the other party accepted said cash and stock as and for $11,000 in money, they should find the said answer true, was certainly sufficiently favorable to the plaintiff. If there was any error, in view of the evidence in the case, it was not against him. After the jury retired, they returned into court, and the court reiterated the instructions, of which the substance is above stated; and neither party excepted. Both sides appear to have accepted such instructions as a correct statement of the law on the point.

The instructions requested by plaintiff were, so far as they stated the law correctly, and were applicable to the case, and not likely to mislead, given by the court in its general charge. It is unnecessary to go over them in detail, further than to say this: that if in any case the receipt in the deed for $11,000 could be *prima facie* evidence, as against one not a party to the deed, of the payment of that sum as the actual price of the land, yet such *prima facie* effect was so completely overthrown by the plaintiff's own testimony that it would have been idle, and probably misleading, to give the instructions requested.

There is no such presumption as that the stock of a corporation is worth its par or face value. The certificate of stock is not an obligation to pay money, which is presumed to be worth its face, because every one is presumed to be solvent; that is, to have sufficient property to pay all his debts. It is only evidence that the holder has an interest in the corporation, and its franchises and property, in the proportion that the stock held by him bears to the whole amount of stock; but it is no evidence of the financial standing of the corporation, nor of the value of its franchises and property.

The plaintiff having admitted in his reply that he signed the application, and not having alleged that when signing he did not know,

or that he had been deceived as to, its contents, it was, though the answers were written by defendant's secretary, as much his act as though he had written the answers himself. The evidence offered of the conversation at the time between him and the secretary was therefore, if offered to vary the effect of the application, incompetent; if offered for any other purpose, it was immaterial. The application for leave to amend his reply so as to make the evidence offered admissible was addressed to the discretion of the court, and allowing him the benefit of an exception to the ruling of the court on the application, (and all that he can claim upon what was said at the time is that by reason thereof he failed to take an exception,) and it will be of no avail; for we see no reason to think the discretion was not judiciously exercised.

To submit any question of fact for a specific finding upon it was wholly in the discretion of the trial court, so it was not error for it to decline to submit the questions prepared by plaintiff.

The note of plaintiff, set up in the answer by defendant as a counterclaim, and upon which a recovery for the full amount thereof and interest is demanded by the answer, was not due, by its terms, till June 22, 1892,—long after the trial. There was no demurrer to the counterclaim. The reply expressly admits the making of the note and mortgage. The note, mortgage, and the assignment to defendant were introduced in evidence by defendant, without objection. The court instructed the jury that, if they found for the plaintiff, they should assess the damages upon the policy and interest, and deduct therefrom the amount of the note and mortgage and interest, and, if they found for defendant, they should render a verdict for the amount of the note and interest. No exception was taken to these instructions. From first to last of the record there is nothing to suggest that the point was ever made in the court below that the counterclaim could not be allowed because the note was not yet due. We think that, on the contrary, it was assumed, and the cause tried and submitted to the jury, without objection by anybody, on the theory that the counterclaim might be allowed. That being so, the plaintiff waived the objection that the claim to recover on the note was premature.

There are several minor assignments of error, none of them well taken, and none of which need be specifically mentioned.

Judgment affirmed.

(Opinion published 52 N. W. Rep. 910.)