IN THE MATTER OF THE ESTATE OF GEORGE CHRIST.[1]
PHILIP CHRIST v. PAUL CHRIST.[1]

March 19, 1926.

No. 24,778.

**Findings of trial court on conflicting evidence will not be reversed on appeal.**
    1. The findings of the due execution of the will by testator, when he possessed testamentary capacity and was not under undue influence, were made upon conflicting testimony and cannot be disturbed by this court.

[1]Reported in 208 N. W. 22.

**Rulings of trial court sustained.**

2. No reversible error is found in the rulings during the trial.

Appeal and Error, 4 C. J. p. 968 n. 37.
Wills, 40 Cyc. p. 1286 n. 28; p. 1358 n. 75.

Philip Christ appealed to the district court for Renville county from an order of the probate court admitting to probate the last will of George Christ, deceased. The appeal was heard by Baker, J., who affirmed the order of the probate court. Philip Christ appealed from an order denying his motion for a new trial. Affirmed.

*L. J. Lauerman* and *Daly & Barnard*, for appellant.

*George F. Gage*, for respondent.

Holt, J.

Appeal in a will contest by the contestant from an order denying his motion for a new trial.

The instrument in question was allowed in the probate court as the last will and testament of George Christ, deceased, that court finding it to have been executed by him as required by law, that he was then mentally competent to make a will, and that no undue influence had been exerted upon him by Paul Christ, the sole beneficiary. On appeal to the district court like findings were made. These findings are here attacked as not having adequate support in the record.

George Christ was a single man 48 years old when, on August 24, 1923, he died in St. Barnabas Hospital, Minneapolis, from nephritis and pyaemia. He left two brothers, appellant and respondent. Appellant has lived in Illinois for 40 years. In 1891 the parents, with George and respondent, moved from Illinois to Minnesota and acquired a 160-acre farm. Both parents are now dead. As long as they lived George lived with them and helped in the running of that farm. Respondent married and acquired a farm nearby. George also bought an 80 in the same vicinity. That 80 and his personal property were disposed of by the will. No disposition was made of his share in the farm the parents owned. Respondent and George had evidently assisted not only the parents but each other in the

farming operations, and it is not difficult to surmise why there was a desire on the part of George, without family, to so arrange it that the brother who had been of the greatest assistance to him and his parents should have the property he had acquired, although it appears that appellant always had been on good terms with his brothers, had corresponded with them and visited them so long as the parents lived. In July, 1923, George became ill, and went to a hospital at Redwood Falls for two or three weeks, then went home and afterwards respondent took him to St. Barnabas Hospital in Minneapolis on August 11, where he died 13 days later. On August 20 this will was made. He was attended by a private nurse from the eighteenth. This nurse and the book-keeper and cashier who drew the will, were the attesting witnesses.

The contentions at the trial were that George did not execute the will, that he had no testamentary capacity on the twentieth of August, and that he was under undue influence. As to the first and last contention, little need be said. The attesting witnesses were intelligent and their testimony is clear and positive that the deceased directed the will to be drawn as it is; that it was read to him; that he personally signed it in the presence of both, and requested each to attest it as witnesses. This is opposed only indirectly by the testimony adduced by appellant that George was in such a comatose condition that he could neither sign nor request anyone to attest an instrument. It is clear that upon such conflicting evidence this court cannot disturb the finding made. As to undue influence the burden was on appellant, the contestant. The only thing in the record, tending to show that respondent might desire to have more than to inherit from his brother, is a letter he wrote to the attending physician about a week before the will was made asking the latter to induce George to straighten his property affairs saying: "I spoke to him about it but he thinks there is lots of time as he don't seem to realize his condition." It is apparent that no complaint can be made of the finding of no fraud or undue influence exerted by the sole beneficiary.

That George Christ did not have testamentary capacity when the will was executed was one of the objections made to its pro-

bate, and the appeal is mainly grounded on the claim that the evidence does not support the finding that "George Christ, at the time of signing the will herein was of legal age and of sound mind and possessed of testamentary capacity." It must be conceded that, had the trial court found lack of testamentary capacity, the finding could not have been set aside under the rules governing this court. We may even admit that, were we required to determine the case de novo upon a reading of the cold record, the result might not coincide with that arrived at in the court below on this proposition. But that is not the function of this court. The trial court has the advantage of observing the witnesses and their demeanor, and the law wisely leaves the determination of facts upon conflicting evidence to him.

Not only the attesting witnesses to the will, but a physician who attended him twice the evening of August 20, when evidently his physical condition was such as to require it, testified that his mind was clear and lucid. In fact the physician recalled a conversation with the deceased concerning a person at Olivia whom both knew. None had more opportunity to observe his mental condition than the private nurse who was with him day and night from the eighteenth of August until his death, except a few hours every afternoon. Also the general night nurse, who saw him at intervals of about an hour prior to the eighteenth, testified to his mental soundness, besides other testimony. These witnesses were persons of more than usual intelligence, some of them experienced with sickness and its effect on the mind, and so far as the record discloses disinterested. No doubt some had much better opportunity for observation than the apparently equally disinterested witnesses for appellant, if Dr. Barden, the doctor in charge of deceased, is excepted. But even he saw deceased only once on the twentieth of August and about an hour before the will was signed. However, there is the hospital chart or record which speaks significantly. If the patient became irrational or comatose at any time it was noted. Nothing of that sort is noted on either the eighteenth, nineteenth, twentieth, twenty-first or twenty-second day of August, but irra-

tional spells are indicated prior to those dates and on the twenty-third we find "comatose" marked on the part of the chart kept by the nurse, and on that part kept evidently by the physician and called "the progress record" we find, under the date of the eleventh when he was admitted to the hospital, "Pt. is mentally dull. Has difficulty in understanding questions;" under date of the seventeenth, "Pt. irrational at times;" and under date of the twenty-third, "Pt. semi-comatose." From this chart the inference is that deceased was rational or his mind normal except at the times noted thereon.

We do not overlook the testimony of the physician in charge, the house doctor, the two doctors who attended him in the hospital at Redwood Falls, nor that of the medical experts called by appellant that at no time of the twentieth, when the will was signed, was George Christ physically or mentally in condition to intelligently transact any kind of business, that he was virtually in a comatose condition from which he could not be aroused long enough to give a coherent answer to a question. Testimony of appellant's witnesses was entirely at variance with those of respondent. In this condition of the record a finding by the trial court should stand. The deceased was no doubt a very sick man the weeks he was in the two hospitals. The progress of the disease had produced carbuncles or boils which were exceedingly painful, a result of the pyaemia. But feebleness and suffering so severe as to cause irrational spells before or after the execution of a will are not determinative of whether or not at the time of execution testator's mind was lucid and functioning properly. Church of St. Vincent de Paul v. Brannan, 97 Minn. 349, 107 N. W. 141; In re Jernberg's Estate, 153 Minn. 458, 190 N. W. 990.

Some minor complaints are made of rulings at the trial. Exhibit A, a tentative disposition of his property made by a nurse at the direction of George Christ and signed by him, but not witnessed, some days previous to the twentieth, was received over objection. It was admissible for the purpose of showing a determination harbored for some time of such a disposition of the property as was

made by the will. It was also properly admitted as evidence of the signature of the testator, his signing of the will being in dispute. In the other rulings of the court we find little subject to criticism. Much is left to the discretion of the trial judge as to when a lay witness has given sufficient facts in respect to observations of and conversations with the person whose mental status is the subject of inquiry to be permitted to give an opinion concerning the same. Restricting cross-examination of the nurse Nelson to matters brought out on direct cannot constitute error for which a new trial should be had, for when the ruling was made appellant was informed that the witness would remain in case he wished to make her his witness. It no doubt would have been proper for the proponent of the will not only to assume the burden of proving the due execution thereof, but also that testator was then of sound mind. Though the latter was deemed unnecessary by respondent in the early stage of the trial, the burden was recognized and assumed before the testimony closed, so no harm was done appellant.

The order is affirmed.

QUINN, J. (dissenting.)
I dissent.