STATE BANK OF ROUND LAKE v. MATT RILEY AND ANOTHER.[1]

March 8, 1929.

No. 27,150.

[1]Reported in 224 N. W. 237.

*F. B. Kalash,* for appellants.

*E. H. Nicholas,* for respondent.

HILTON, J.

Appeal by defendants from a judgment against Frank P. Riley for $4,000 and also setting aside, canceling and annulling as fraudulent and void a transfer of real estate.

Defendant Matt Riley is the father of the defendant Frank P. Riley. On June 5, 1925, and for long prior thereto, Matt was the owner of 160 acres of unencumbered land in Jackson county, Minnesota, the east 80 of which was his homestead. He also owned personal property of the value of several thousand dollars and had no debts except the $2,000 note hereinafter referred to. On May 27 of that year, and for several years prior thereto, Frank was indebted to plaintiff in the sum of $5,000, evidenced by two notes, one for $3,000 secured by a real estate mortgage on hotel property in Round Lake, Minnesota, and the other for $2,000 signed by both defendants. The original $5,000 indebtedness was Frank's, and there had been numerous renewals. On May 27, 1925, at the request of defendants, this indebtedness was changed in form by the giving and acceptance of a new note for $1,000 secured by a mortgage on the hotel property, and a new note for $4,000 signed by Matt alone. The old notes and mortgages were canceled and returned. At the time of this transaction, defendants agreed and promised that Matt would secure, by December 1 next, through plaintiff, a loan on his farm for $4,000 and pay up the $4,000 note. This was not done. Less than ten days thereafter, and on June 5, 1925, Matt and his wife deeded the real estate to Frank without any paid consideration and also conveyed all the personal property to him, thereby making Matt wholly insolvent. Shortly after June 5, 1925, Frank mortgaged the land to a third party for $3,500, built a house on the west 80, married and moved thereon and still occupies the premises with his

wife. The complaint sufficiently charged fraud and conspiracy and intent to hinder, delay and defraud plaintiff. The court found that there was a conceived plan and scheme by the defendants to defraud plaintiff and to make Matt wholly insolvent, and that this scheme was accomplished by the means used and the false and untrue representations knowingly made by defendants and relied upon by plaintiff.

■ This case had a previous trial at which two questions were submitted to the jury: (1) Was the deed given by Matt Riley and his wife to Frank made with intent to hinder, delay and defraud plaintiff? (2) Was the deed made upon a fair consideration? The first question was answered in the negative and the latter in the affirmative. The court, on a proper motion, set aside the verdict and ordered a new trial. At the second trial the defendants asked that the same questions be again submitted to a jury. This was denied. The case was tried to the court, upon agreement of parties, upon the evidence taken at the first trial, with the addition of a few exhibits not here necessary to mention.

The case is one in equity, triable by the court. Whether issues shall be submitted to a jury is discretionary. Roussain v. Patten, 46 Minn. 308, 48 N. W. 1122; Stensgaard v. St. Paul R. E. T. Ins. Co. 50 Minn. 429, 52 N. W. 910, 17 L. R. A. 575; Banning v. Hall, 70 Minn. 89, 72 N. W. 817; Cochran v. Cochran, 96 Minn. 523, 105 N. W. 183; Morgan v. City of Albert Lea, 129 Minn. 59, 151 N. W. 532; Lewis v. Murray, 131 Minn. 439, 155 N. W. 392; Knappen v. Locomotive E. M. L. & A. Ins. Co. 166 Minn. 328, 207 N. W. 641; 6 Dunnell, Minn. Dig. (2 ed.) § 9838, and cases cited. We certainly cannot hold that there was an abuse of that discretion here. The circumstance that at the first trial two issues were submitted to the jury in no way changes the situation.

■ Other assignments call in question the sufficiency of the evidence. Only a portion of the evidence need be recited. Frank had lived with his father and mother on the farm for many years. In a signed credit application given to plaintiff several years before, which was a continuing one and in force on May 27, 1925, they

stated that they were partners in operating the farm, and that Frank was operating the farm with his father with the understanding that he was to inherit it. In 1914 Matt Riley made a will devising the west half of the land to Frank and devising to him the east half subject to the life estate of the mother. The will provided for certain payments to the other children. In 1921 a new will was executed making the same disposition of the land but reducing the amount of the payments to the other children. Both wills provided first for the payment of testator's just and lawful debts. These wills were drawn and witnessed by the cashier of plaintiff.

The evidence discloses that each defendant kept a separate bank account; Frank had the right to check on his father's account; Frank sold stock and produce from the farm and deposited the proceeds in his own bank account—one instance of this kind was a sale of stock amounting to over $2,000; frequent settlements were had between them, and at the end of 1918 Frank had in his personal bank account over $1,500 after a settlement with his father. This all bears out the property statement made to the bank that they were operating the farm as partners. In the light of the two wills and the evidence just referred to and other controlling circumstances, it is manifest that the contention that Frank had earned this property by staying at home and working for his father, and was to have a deed to the land from the father and mother during the former's lifetime as compensation for his services, was not substantiated by proof. Whatever the burden of proof upon plaintiff may have been, it was more than carried. The facts in the cases cited by defendants clearly distinguish them from this case. When asked to pay the $4,000 note Frank refused, saying that he had not signed it; and Matt refused, stating that he owned no property. On March 6, 1926, plaintiff recovered a judgment against Matt for $4,000, interest and costs.

It is not strange that the court characterized the attempt made to deprive the plaintiff of the amount justly due it as "bold and apparent." The evidence abundantly supported the findings, and the

judgment setting aside the conveyance of the west 80 acres was properly ordered and entered. 1 Dunnell Minn. Dig. (2 ed.) § 411, and cases cited.

■ The claim that the judgment should not have been entered against Frank for $4,000 is without merit. The court correctly stated that the $4,000 debt was originally and at all times Frank's. It did not cease to be such because of the fraud participated in by both defendants. He cannot profit by his own wrong and thus escape liability. The complaint sufficiently raised the issues. Both Matt and Frank defended and were witnesses. The complaint, as is usual, besides asking for a setting aside of the transfers, asked for such other and further relief as to the court may seem just and equitable. Having jurisdiction over the subject matter of the action and of the defendants, the court was within its powers and was justified in setting aside the conveyance and ordering a money judgment against Frank, and thus, to the extent possible, granting relief for a part of the loss sustained by plaintiff. A court of equity is not helpless under such conditions. Bauer v. O'Brien Land Co. 144 Minn. 130, 174 N. W. 736; Hoffman M. T. Co. v. Erickson, 124 Minn. 279, 144 N. W. 952; 3 Dunnell, Minn. Dig. (2 ed.) §§ 3851, 3893, 3896, 5041, and cases cited; 27 C. J. p. 777, § 688, p. 855, § 821; 20 Cyc. 821.

Judgment affirmed.

