## OLGA J. LOTH v. ALBERT B. LOTH.[1]

January 7, 1949.

No. 34,778.

---

[1]Reported in 35 N. W. (2d) 542.

388

*Guesmer, Carson & MacGregor,* for appellant.
*Fred A. Ossanna* and *Charles T. Hvass,* for respondent.

PETERSON, JUSTICE.

Plaintiff was granted a divorce. Defendant appeals. On the appeal no questions are raised with respect to the propriety of granting the divorce. Defendant's only contention is that the alimony and allowances awarded are excessive.

Defendant's contention that the alimony and allowances awarded to plaintiff are excessive raises the following questions: (1) Whether upon conflicting evidence a finding is justified that defendant made a gift to plaintiff of the excess of money deposited in bank accounts as joint tenants over and above amounts expended by her to maintain their home; (2) whether corporate stocks owned by defendant and an interest in life insurance policies on his life were part of defendant's property and subject to be awarded as alimony, where the value of neither the stocks nor the interest in the life insurance policies so awarded was shown; (3) whether accrued temporary alimony adjudged by the judgment of divorce to be paid is an award of permanent alimony for the purpose of computing one-third of defendant's property, the statutory maximum which may be awarded as such; and (4) whether the award here made is excessive in view of the circumstances of the case. There are some subsidiary questions to be decided which we need not mention now.

These questions arise out of the decision below holding in effect that defendant had made a valid gift to plaintiff of the money in the bank accounts; that consequently the bank accounts were not to be considered as part of defendant's property or as part of the alimony awarded; that the stocks and the interest in the life insurance policies were not only part of defendant's property and sub-

ject to an award of alimony, but also for lack of proof of the value thereof were to be considered as having only nominal value; that the accrued temporary alimony adjudged to be paid was not to be considered in determining the amount of either defendant's property or of the permanent alimony awarded; and that the amounts awarded were reasonable under the circumstances.

The decision granting plaintiff a divorce was filed on December 16, 1947. Plaintiff and defendant were then 52 and 58 years old, respectively, and had been married for approximately 30 years, during which they raised a family of two sons, one of whom was killed in World War II, and a daughter. Defendant, a baker, like many others, had humble beginnings and rose in his chosen field. During his early years he operated a bakery with the assistance of plaintiff. Later, he became an executive of Gladness Bakeries, Inc., at a substantial salary. All seems to have gone well for the parties during the years of their joint struggles when they operated their own business, but not so after defendant became a bakery company executive, because then his attitude toward his wife changed, and his treatment of her was cruel and inhuman, consisting in part of an adulterous affair with another woman. As a result thereof, plaintiff sustained severe shock and impairment of health.

In view of the facts that plaintiff upon the appeal stated the value of certain aviation and radio stocks owned by defendant, which was not shown in the record, to be $7,162.50, and that defendant has adopted the statement for purposes of submission here, we deem it advisable to state first what the record, upon which the trial judge based his decision, shows, and then what it shows as modified by plaintiff's statement. The record, as made below, shows that defendant owned at the time of decision there a house and lot valued at $6,500; three bank accounts aggregating $3,857.88; cash amounting to $7,746; five life insurance policies, the cash surrender value of which was $5,622.20; war savings bonds amounting to $1,233.86; stock of Gladness Bakeries, Inc., of the value of $21,-449.50; a Ford automobile of the value of $1,100; and the aviation and radio stocks, the value of which was not shown. If a nominal

value be placed on the latter—$10—the value of the whole of defendant's property was $47,519.44. If the $2,175 accrued temporary alimony be deducted therefrom, his property was of the value of $45,344.44. The permanent alimony awarded to plaintiff consisted of the home valued at $6,500, cash amounting to $3,871.94, war savings bonds, $1,233.86, and the aviation and radio stocks (at a nominal value) at $10, making a total of $11,615.80, or approximately one-fourth of defendant's property.

If, as defendant claims, the amount of the bank accounts which plaintiff claims he gave her, $12,272.74, and which she withdrew from the banks prior to the commencement of the action, be considered as part of his property and of the alimony awarded, the value of the whole of his property would be $59,792.18 and the amount of the alimony would be $23,888.54. If to the latter figure be added the $2,175 accrued temporary alimony, the amount of the alimony awarded would be $26,063.54. In any event, according to defendant's contentions, the amount of alimony awarded greatly exceeds the permissible statutory one-third. But defendant does not stop here. He contends that the cash surrender values of the insurance policies ($5,622.20) and the value of the aviation and radio stocks ($7,162.50, from which the nominal value [$10] allowed should be deducted) should be added to both the amount of his property and the alimony awarded, thereby making the amount of the latter still more excessive.

If, however, the value of the aviation and radio stocks be added to the undisputed items comprising defendant's property, the value of his whole property would be $54,671.94. If the $2,175 accrued temporary alimony be regarded as diminishing his whole property by that amount, his whole property amounted to $52,496.94. If the value of those stocks be added to the amount of the alimony awarded, it would amount to $18,768.30, or $1,269.32 in excess of one-third of the value of defendant's property.

At the trial, plaintiff's counsel stated to the court that he assumed that the court would take judicial notice of the value of the aviation and radio stocks and, acting upon that assumption, of-

fered no evidence as to their value. The trial judge gave no intimation that he would act upon counsel's assumption. Defendant's counsel remained silent, and he also offered no evidence as to their value. It is apparent from the motion for amended findings that defendant's counsel acted upon the supposition that, because the value of the stocks was not shown, the court could not take them into consideration in awarding alimony.

We shall make such further statement of the facts as may be necessary in connection with the particular questions to be considered.

■ The argument of defendant has proceeded upon the assumption that upon appeal we should consider the entire case *de novo*. As we have repeatedly pointed out—as recently as in Lappinen v. Union Ore Co. 224 Minn. 395, 411-412, 29 N. W. (2d) 8, 19—our so-called appeal is in the nature of a writ of error, under which our function is not to try a case *de novo,* but to determine whether error was committed in the trial court. And, as pointed out in the Lappinen case, it follows that in this court a finding of the trial court is attended with every presumption of evidentiary support. The rule applies in divorce cases the same as in others. As said in Potter v. Potter, 224 Minn. 29, 32, 27 N. W. (2d) 784, 786 (quoting from Waters v. Fiebelkorn, 216 Minn. 489, 495, 13 N. W. [2d] 461, 464):

"It is well to bear in mind that on appeal error is never presumed. It must be made to appear affirmatively before there can be reversal. Not only that, but the burden of showing error rests upon the one who relies upon it. And we do not reverse unless there is error causing harm to the appealing party. In other words, error without prejudice is not ground for reversal."

■ In harmony with and as a corollary of the rules relative to our appellate function, it follows that the trial court is the finder of the facts, and that conflicts in the evidence are to be resolved in that court. In Baker v. Baker, 224 Minn. 117, 120, 122, 28 N. W. (2d) 164, 167, we said:

"* * * Obviously, as an appellate court, we cannot determine issues of fact *de novo*, but must accept any awards for alimony and for the adjudication of property rights unless, in the light of the evidence as a whole, it appears that the trial court has abused its discretion.

* * * * *

"* * * Findings of fact based on conflicting evidence will not be disturbed on appeal unless manifestly and palpably contrary to the evidence as a whole."

In order to maintain the rule in its integrity, this court will not reverse a finding having evidentiary support, even though we might find the fact to be different if we had the fact-finding function. In re Estate of Christ, 166 Minn. 374, 208 N. W. 22.

■ The award of alimony and allowances is governed by M. S. A. 518.22, which so far as it is material here reads:

"* * * but the aggregate award and allowance made to the wife from the estate of the husband under this section shall not in any case exceed *in present value* one-third of the personal estate, earnings, and income of the husband, and one-third in value of his real estate." (Italics supplied.)

While the statute refers to one-third of the value of the personal estate and to one-third of the value of the real estate, the value of the whole of the husband's property, both real and personal, is to be considered in awarding alimony, and the award, not to exceed one-third thereof, should be made out of the whole and not out of the real and personal estate separately. Baker v. Baker, 224 Minn. 117, 28 N. W. (2d) 164; Maust v. Maust, 222 Minn. 135, 23 N. W. (2d) 537; Longbotham v. Longbotham, 119 Minn. 139, 137 N. W. 387. Here, the trial court applied the rule stated.

■ A husband may make a valid gift to his wife of personal property. State v. One Buick Sedan Automobile, 216 Minn. 129, 12 N. W. (2d) 1; Coulter v. Meining, 143 Minn. 104, 172 N. W. 910. Accordingly, a husband may make a gift to his wife of a bank deposit. 41 C. J. S., Husband and Wife, § 152. In the particular

case, whether there was a gift is a question of fact. The particular form of the deposit is not determinative of the matter. Dyste v. Farmers & M. Sav. Bank, 179 Minn. 430, 229 N. W. 865. The form of the deposit becomes the determining factor only if there is no other evidence of the depositor's intent. Here, there is testimony other than the form of the deposit as to the intention of the parties, which, while it is in conflict, definitely supports a finding of a gift. Plaintiff testified:

"Well, he would give me a check and he would say, 'Well, now, take care of all the household expeditures [expenditures] or any of the expenditures, and *whatever is left over, you do with it as you please,*' or '*It is yours.*' He wasn't bothered with the household expenditures or any of the financial home expenses." (Italics supplied.)

While defendant denied plaintiff's testimony, his explanations are not entirely opposed thereto. He testified that the purpose of the joint bank accounts was to avoid probate in case one of them died. He kept a large part of his property in his own name. Thus, his explanation lends credence to the view adopted by the trial court, that so far as the bank accounts were concerned the joint tenancy went not to ownership of the deposits, but to convenience of obtaining them in the event of death of one of the parties. Under our rules governing review on appeal, the finding of the trial court that there was a gift is supported by the evidence and should be sustained.

■ There is no presumption that corporate stock has substantial value. Fogg v. Blair, 139 U. S. 118, 11 S. Ct. 476, 35 L. ed. 104; Castle v. Acme Ice Cream Co. 101 Cal. App. 94, 281 P. 396; Henry v. Kopf, 104 Conn. 73, 131 A. 412; Hansbrough v. D. W. Standrod & Co. 49 Idaho 216, 286 P. 923; Babcock v. Harrsch, 310 Ill. 413, 141 N. E. 701; Butler County State Bank v. Van Matre, 112 Kan. 556, 212 P. 107; Hussey v. Flanagan, 237 N. Y. 227, 142 N. E. 594; 20 Am. Jur., Evidence, § 242; 31 C. J. S., Evidence, § 150. In the Hussey case the court expressed the view that the rule is (237

N. Y. 236, 142 N. E. 596) "settled." The rule was applied in Burnet v. Houston, 283 U. S. 223, 51 S. Ct. 413, 75 L. ed. 991; Burnet v. Henry, 283 U. S. 229, 51 S. Ct. 416, 75 L. ed. 995; Burnet v. Porter, 283 U. S. 230, 51 S. Ct. 416, 75 L. ed. 996. A little more than a year after the decision in the Fogg case, *supra,* we decided Stensgaard v. St. Paul Real Estate Title Ins. Co. 50 Minn. 429, 52 N. W. 910, 17 L. R. A. 575, where the issue was whether corporate stock is presumed to be of its par value. While we did not cite the Fogg case in the Stensgaard case, the reasoning of the latter follows closely that of the former. We said (50 Minn. 436, 52 N. W. 911):

"There is no such presumption as that the stock of a corporation is worth its par or face value. The certificate of stock is not an obligation to pay money, which is presumed to be worth its face, because every one is presumed to be solvent; that is, to have sufficient property to pay all his debts. It is only evidence that the holder has an interest in the corporation, and its franchises and property, in the proportion that the stock held by him bears to the whole amount of stock; but it is no evidence of the financial standing of the corporation, nor of the value of its franchises and property."

It is clear from the last sentence of the quotation that in the Stensgaard case we meant to hold that there is no presumption that corporate stock has any value, par or otherwise, the same as was held in the Fogg case. In Babcock v. Harrsch, 310 Ill. 413, 141 N. E. 701, the Stensgaard case is cited as authority for such a rule.

There are some cases and authorities to the contrary, including cases from Kansas, Michigan, Missouri, and Pennsylvania, and a dictum in our own case of Hawkins v. Mellis, Pirie & Co. 127 Minn. 393, 149 N. W. 663, Ann. Cas. 1916C, 640. The Hawkins case cites Uncle Sam Oil Co. v. Forrester, 79 Kan. 610, 100 P. 512; Brinkerhoff-Farris T. & S. Co. v. Home Lbr. Co. 118 Mo. 447, 24 S. W. 129; Moffitt v. Hereford, 132 Mo. 513, 34 S. W. 252; Harris Appeal, 9 Sadler (Pa.) 233, 12 A. 743; and 4 Thompson, Corporations (2 ed.) § 3496, but it neither cites nor refers to the Stensgaard case, *supra.* Thompson cites cases from Missouri and Pennsylvania. The rule of the

cases cited in the Hawkins case and of the text there cited is unsound in principle, for the very plain reason given in Virginia v. West Virginia, 238 U. S. 202, 35 S. Ct. 795, 59 L. ed. 1272, that common experience negatives rather than supports a presumption that corporate stock has par or even substantial value. In the Virginia case, the rule announced in Harris Appeal and Moffitt v. Hereford, cited by us in the Hawkins case, *supra,* was expressly disapproved. There, Mr. Chief Justice Hughes (then an associate justice), speaking for the court, said (238 U. S. 219, 35 S. Ct. 802, 59 L. ed. 1282) :

"Statements may be found to the effect that par value is *prima facie* actual value (Appeal of Harris, 9 Sadler [Pa.] 233, 12 Atlantic Reporter, 743; Moffitt v. Hereford, 132 Missouri, 513, 34 S. W. 252), but if such statements can be deemed to announce a comprehensive rule, to be applied in the absence of evidence as to the property and business of the corporation, we cannot regard it as well founded. There is no such presumption of law and common experience negatives rather than raises such an inference of fact. We took this view in Fogg v. Blair, 139 U. S. 118, 127, 11 S. Ct. 476, 35 L. ed. 104, 107, when we criticized the supposition 'that the court, in the absence of averment or proof to the contrary, would assume that it (stock) was worth par, or had substantial value.' See also Griggs v. Day, 158 N. Y. 1, 23 [52 N. E. 692]; Warren v. Stikeman, 84 App. Div. (N. Y.) 610 [82 N. Y. S. 1003]; Beaty v. Johnston, 66 Arkansas, 529 [52 S. W. 129]. Shares represent the proportionate interest of the shareholders in the corporate enterprise, and a rule that this interest in the absence of all supporting evidence should be taken as actually worth the par of the shares would be wholly artificial. There is no exigency in the administration of justice which requires or justifies such an extreme assumption."

In Butler County State Bank v. Van Matre, 112 Kan. 556, 212 P. 107, the Kansas court in effect overruled Uncle Sam Oil Co. v. Forrester, 79 Kan. 610, 100 P. 512, cited by us in the Hawkins case, *supra,* and adopted the rule that there is no presumption that corporate stock has any substantial value, by holding (112 Kan. 558, 212 P. 108) :

"* * * Shares of stock in corporations are known to be of such variable value that no presumption concerning value can be applied. There is just as much of a presumption that shares of stock are worthless as there is that they have any value."

The case of Du Boise v. Flint Commonwealth Corp. 230 Mich. 295, 203 N. W. 71, is sometimes cited as announcing the rule in favor of presumptive par value, but it is not clear from the opinion that the court intended so to hold, for the reason that there the court said that it was fairly "inferable" from the contract there involved that the stock represented assets in the corporation equal to its par value and that therefore the court was bound to "assume" that the stock fairly represented such value when it was issued. But if the Michigan court meant to hold that there is a presumption that corporate stock is of par value, we disapprove it for the reasons already given. Accordingly, we adhere to the rule that there is no presumption that corporate stocks have substantial value, and we overrule the dictum to the contrary in the Hawkins case, *supra*.

■ Bonds are presumed to be of their face value. Fort Dearborn Nat. Bank v. Security Bank, 87 Minn. 81, 91 N. W. 257; Bowers v. Max Kaufmann & Co. Inc. (2 Cir.) 18 F. (2d) 69; 2 Dunnell, Dig. & Supp. § 1958. The rule is different from that with respect to corporate stocks, for the reason that a bond is an obligation to pay money, and the maker thereof is presumed to be solvent. State ex rel. Susquehanna Ore Co. v. Bjornson, 194 Minn. 649, 259 N. W. 392, 262 N. W. 574. Accordingly, the government bonds are presumptively worth their face value. Windahl v. Hasselman, 198 Iowa 1001, 200 N. W. 583; Dakota Nat. Bank v. Brodie, 46 N. D. 247, 176 N. W. 738. There may be a possible exception to the rule that a bond is presumed to be worth its face value (a question we do not decide) in cases where it appears that the value thereof is fluctuating and is determined by market price. Marsh v. Brown-Crummer Inv. Co. 138 Kan. 123, 23 P. (2d) 465, 88 A. L. R. 835.

■ The court will not take judicial notice of the value of particular personal property (Sleeper v. Zeiter, 178 Minn. 622, 227 N. W. 662), even though its value is determined by public trading

in the market (Marsh v. Brown-Crummer Inv. Co. *supra* [bonds the value of which is shown to be determined by market prices]); Towne v. St. Anthony & D. Elev. Co. 8 N. D. 200, 77 N. W. 608 (wheat determined by market price thereof). Accordingly, the court will not take judicial notice of the market value of the corporate stocks or of the value of the interest given plaintiff in defendant's life insurance policies. True, the evidence showed the cash surrender value of the policies, but that is not helpful here, because plaintiff was given not the policies or the right to cash them, but a right to have her name carried therein as beneficiary so long as she should live, conditioned that she should pay the premiums thereon. Just what the value is of such an interest in a life insurance policy subject to such burdens does not appear from the evidence. We have no doubt that the value thereof is susceptible of determination by an actuarial computation. We are not only incompetent to make the computation, but we have been furnished no factual basis in the record for making it. It has been held that, while courts take judicial notice of ordinary mathematical propositions and scientific data so commonly known as to be axiomatic, they will not take such notice of the cash surrender value of a life insurance policy, for the reason that such value depends partly on extraneous facts and partly on the accuracy of an intricate calculation. Heuring v. Central States L. Ins. Co. 232 Mo. App. 731, 120 S. W. (2d) 176; 31 C. J. S., Evidence, § 101, note 82. By parity of reasoning, the court should decline to take judicial notice of the value of the interest in the defendant's life insurance policies awarded to plaintiff.

■ We do not agree with defendant's contention that for purposes of computing allowances to be awarded to the wife his income should be taken as the average for a period of six years rather than the income for the year preceding the award. The evidence shows defendant's net income, less deductions for federal income taxes (there was no proof that the deductions did not cover the taxes or that the taxes paid reduced his net income below the figures given), was $4,158.27 in 1941 and that it increased substantially annually until it amounted to $12,509.86 in 1946. The statute (§ 518.22) pro-

vides that the award shall not "exceed *in present value* one-third of the * * * income of the husband." (Italics supplied.) That obviously was his income at the time of the award. Absent statute, the rule is as stated in 19 C. J., Divorce, § 589:

"The husband's income must be estimated at the amount of the previous year, and not by an average of years," citing Williams v. Williams, L. R. 1 P. & D. 370; Kelly v. Kelly, 1 Spinks 412.

See, also, 27 C. J. S., Divorce, § 233.

It is, of course, pertinent to inquire as to the amount earned in other years to determine whether, because of extraordinary reasons, the income for a particular year is no guide. Defendant, however, makes no such claim here. He simply contends that his income should be computed on an average basis.

Here, the award of $3,600 per year was much less than one-third of defendant's annual income at the time of the award. On top of that fact, the award was burdened with the payment of premiums on the insurance policies, from which defendant receives benefits in undetermined amount.

■ Ordinarily, the record made by the trial court is conclusive on appeal, and the appellate court will limit its consideration of the case not only to questions presented to and decided by the trial court, but also to the record upon which decision of such questions was based. See, State v. Soltau, 212 Minn. 20, 2 N. W. (2d) 155. An apparent exception to the rule is that an uncontroverted statement in appellee's or respondent's brief or argument will be taken as true. Ellis v. Frawley, 165 Wis. 381, 161 N. W. 364 (statement by appellee of facts not in evidence); 4 C. J. S., Appeal and Error, §§ 1343 to 1345.

■ Where the value of property or a right is not shown in a litigation, it will be considered to be only nominal. Sime v. Jensen, 213 Minn. 476, 7 N. W. (2d) 325; Geo. Benz & Sons v. Hassie, 208 Minn. 118, 293 N. W. 133; Whittaker v. Stangvick, 100 Minn. 386, 111 N. W. 295, 117 A. S. R. 703, 10 L.R.A. (N.S.) 921, 10 Ann. Cas. 528; 2 Dunnell, Dig. & Supp. § 2522; 15 Am. Jur., Damages, §§ 5 to 8;

25 C. J. S., Damages, § 9. Under the rule, both the stocks (aviation and radio) and the interest awarded plaintiff in defendant's life insurance should be considered on the record for lack of proof therein of the value thereof as being of only nominal value.

■ Accrued temporary alimony consists of allowances awarded to plaintiff for her support during the pendency of the action which were not paid as they came due. If they had been so paid, they would not have come out of defendant's property at the time of the award of permanent alimony. The fact that they were not so paid does not change their nature. Presumably, if the payments had been made as they came due, defendant's property would have been that much the less. Accordingly, we hold that the accrued temporary alimony is not to be considered as part of the permanent alimony awarded, but that it should be considered as reducing defendant's whole property by the amount thereof.

■ In reviewing on appeal the reasonableness of the amount of permanent alimony, the standards to be applied are those prescribed by § 518.22, that it shall not exceed one-third of the husband's property and income and that it shall be such as the court "deems just and reasonable, having regard to the ability of the husband, the character and situation of the parties, and all other circumstances of the case." While the statute authorizes an award of one-third of the husband's property and income, it does not follow in every case that one-third thereof should be awarded. Baker v. Baker, 224 Minn. 117, 28 N. W. (2d) 164, *supra*. Nor does it follow that, because the court may award less than one-third, it is bound to do so in every case. The award should be "just and reasonable," and, if the court deems one-third to be such, it should award it. Permanent alimony is a substitute for the wife's support by the divorced husband. In determining the amount thereof, the wife's needs within the limits implicit in the nature thereof and the husband's ability to make payment thereof should be considered. There are no fixed standards for measuring the amount of permanent alimony. The statute confides in the court a broad discretion in fixing the amount. Potter v. Potter, 224 Minn. 29, 27 N. W. (2d)

784; Webber v. Webber, 157 Minn. 422, 196 N. W. 646. The wife here needs the amounts awarded. The alimony awarded affords her support according to the standards of living of the parties prior to the divorce, subject to diminution thereof to the extent that the amounts awarded are burdened with the payment of the premiums on defendant's life insurance. She has no earning capacity. Her health has been ruined—and that as a result of defendant's wrongs against her. While the fact that defendant has wronged plaintiff is no reason for retribution in determining the amount of alimony, it is at least a good reason for not relieving him from his duty to care for and support her. On the other hand, defendant has not only the property, but the income to make the payments required of him. The latter has shown a steady surge upward. After the payments are made, defendant will still have substantial property and a large income. Certainly, both will be ample for his needs. We are unable to say that the court abused its discretion in determining the amounts of alimony and allowances.

On the record made in the trial court and upon which the case has been brought before us for review, defendant is not only unable to meet the burden resting upon him of affirmatively showing error in the amount of the allowances and alimony awarded, but also of showing any harm to him therefrom. At the outset, the allowance of $3,600 per year, burdened as it is with the payment of the premiums on defendant's life insurance, out of defendant's annual income of $12,509.86, does not exceed, much less equal, one-third thereof. Since, as has been pointed out, all the husband's property—that includes the aviation and radio stocks and life insurance, as well as other property—is to be considered in awarding alimony, defendant is unable to meet the burden of affirmatively showing that the amount awarded exceeds one-third thereof. The value of the stocks and of the interest of the wife in the life insurance not being shown, it does not appear from the record that by including them in the award the amount thereof has been made to exceed one-third of defendant's property. The value of all of defendant's property less the $2,175 accrued alimony is $45,344.44. This includes a nominal

allowance of $10 for the stocks, the value of which was not shown. The alimony awarded amounts to $11,615.80, which plainly is less than one-third of defendant's property. This includes a nominal allowance of $10 to cover the stocks mentioned and the interest awarded the wife in defendant's life insurance, the values of which were not shown. For lack of proof as to values of the items in dispute, it cannot be shown that defendant's property or the award of alimony exceeds one-third of defendant's property. Likewise, if the court had refused to include the stocks in the award to the wife and to include therein an interest in the life insurance and if the wife were appellant, she would be unable affirmatively to show inadequacy of the amount adopted as the basis for the award or of the award itself.

Defendant is not only unable affirmatively to show error, but the presumptions obtaining because of the lack of proof of the value of the items in question are against him. The corporate stock is not presumed to have substantial value. The same is true of other property. As to the interest awarded the wife in the life insurance, the rule applies that where the value of property or other right involved in a litigation is not shown it will be presumed to have only nominal value.

Decision here based solely upon a review of the record—a record advisedly made in the hope of deriving advantage therefrom and the one upon which the trial court based its decision—would under the circumstances necessarily be one of affirmance.

But decision here is not based exclusively upon a consideration of the record, but upon both the record and the statement of plaintiff's counsel as to the value of the aviation and radio stocks. Of course, the statement changes the picture here from what it was in the trial court. It necessitates adding the value of the stocks ($7,162.50) to both the value of defendant's property and the amount of the award, thereby making the former $52,496.94 and the latter $18,768.30. Thus, the amount of the alimony awarded exceeds one-third of the value of defendant's property by $1,269.32. This requires a modification of the amount awarded to the extent of the

excess, which should be deducted from the amount of cash included in the award. Defendant is thereby rescued from an absolute affirmance and secures a modification on appeal, not through any showing of his own, but solely by reason of the forthright statement of plaintiff's counsel as to the value of such stocks.

Our conclusion is that the award of alimony below be modified by deducting therefrom the $1,269.32 included therein in excess of one-third of the value of defendant's property, and that, as modified, the order be affirmed. By obtaining on the appeal a modification of the order below, defendant is the prevailing party, entitling him to costs and disbursements under the rule governing the matter. But, as we held in Collins v. Collins, 221 Minn. 343, 22 N. W. (2d) 168, 23 N. W. (2d) 9, this court is vested by the statute (§ 607.01) in divorce cases the same as in others with discretion as to whether the prevailing party shall be awarded statutory costs, but not as to "disbursements necessarily paid or incurred." Ordinarily, a modification of the sort here made should be obtained in the district court upon proper motion and showing. While a motion for amended findings of fact and conclusions of law was made, there was neither a proper motion nor showing to obtain such a modification. Accordingly, in the exercise of our discretion, we disallow defendant statutory costs, but allow him his necessary disbursements. Plaintiff is awarded on the appeal her disbursements and, in addition, $500 attorneys' fees.

Affirmed as modified in accordance with the opinion.