**In re ESTATE OF Donna Lee WHISH, Respondent,**

v.

**Elvern BIENFANG, Appellant.**

**No. C2–00–1705.**

Court of Appeals of Minnesota.

March 13, 2001.

Frederick Kopplin, Frederick R. Kopplin, P.A., Minneapolis, MN, for respondent.

Robert V. Espeset, Barry L. Blomquist, Jr., Blomquist & Espeset, Minneapolis, MN, for appellant.

Considered and decided by TOUSSAINT, Presiding Judge, HANSON, Judge, and HUSPENI, Judge.[*]

## OPINION

HANSON, Judge.

In this probate proceeding, appellant contests the district court's determination that funds transferred by the decedent during her lifetime to appellant's individual checking account were not intended as a gift and remained the property of the decedent's estate. Appellant argues (1) once the funds were transferred to his account, he became the presumptive owner; (2) there was no evidence of fraud, theft, conversion or other wrongful conduct and thus the presumption was not rebutted and (3) the district court's findings and conclusions as to ownership were thus erroneous. We reverse.

## FACTS

Appellant Elvern Bienfang knew decedent Donna Whish for approximately 30 years until her death in September of 1994. They resided together from 1988 until she entered a nursing home less than one year prior to her death. Whish's minor son, Addison, resided with them. Throughout this period Whish and Bienfang lived as a family, parenting Addison,

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

vacationing and maintaining the household together. Initially, they lived in Bienfang's residence, but in 1990, Whish purchased a home in Robbinsdale and placed title in the name of Bienfang. Their mutual expenses were paid from Bienfang's individual checking account, to which Bienfang deposited his earnings and Whish periodically transferred funds from her own account with a bank in Oklahoma. Their individual funds were commingled in this account with no evidence of any expectation that they would be separately disbursed or even accounted for.

Whish became ill in 1993, necessitating her entry into the nursing home, but she remained mentally competent. During the last year of her life, she executed a will naming Bienfang personal representative and trustee, had him appointed as Addison's guardian and granted him a health care power of attorney. She also made transfers totaling over $250,000 into Bienfang's checking account during this period. She made the arrangements for each transfer voluntarily, without any action or direction by Bienfang, and she was aware of how the funds were spent prior to her death.

Prior to Whish's death, Bienfang used some of these funds to purchase three vehicles and to pay for home improvements performed by Ronald Rupart, a contractor friend of Bienfang and Whish and the recipient of one of the vehicles. Both Rupart and Bienfang testified that Whish wanted to purchase the vehicles for them with money in Bienfang's account. Bienfang also testified that it was Whish who decided on the home improvements and it was her idea that he pay for them with money that she had transferred to his checking account. While all home improvements were commenced prior to Whish's death, some of the payments occurred after her death.

In April of 1999, Whish's daughter, Darla Whish–Smith, brought a petition to remove Bienfang as personal representative of Whish's estate, to have herself appointed as successor personal representative, and to obtain judgment against Bienfang for the return of funds transferred by Whish to Bienfang's account. The district court did not find that Bienfang had breached any fiduciary duty or committed theft, but concluded that he should be removed as personal representative of the estate (for conflict of interest reasons) and ordered judgment against him in the amount of $86,588. The court apparently determined that, while the other funds transferred by Whish were a gift to Bienfang or were used for Whish's expenses, the amount that was used to purchase the vehicles and to pay for home improvements was not a gift and was expended without Whish's consent.

Bienfang appeals from the district court's monetary judgment.

## ISSUE

Do the district court's findings of fact support its conclusion that funds transferred by decedent during her lifetime to appellant's account remained the property of the decedent's estate?

## ANALYSIS

■ The district court's determination that Bienfang misappropriated funds from Whish's estate predicates conclusions of law upon a variety of findings, presenting mixed questions of law and fact. In the review of a district court's decision on mixed questions of law and fact, the district court's rulings are not binding on this court and we review them independently. *Meyering v. Wessels*, 383 N.W.2d 670, 672 (Minn.1986).

■ Darla Whish–Smith sought judgment against Bienfang, both individually and in his capacity as personal representative, for breach of fiduciary duty and theft. Bienfang was appointed personal representative upon the order for probate of Whish's will on December 15, 1994, two and a half months subsequent to her death. All of the expenditures in question

occurred prior to Bienfang's appointment as personal representative of the estate. Therefore, any liability of Bienfang to the estate must be in his individual capacity, because the "duties and powers of a personal representative commence upon appointment." Minn.Stat. § 524.3–701 (2000).[1]

The district court did not find that Bienfang acted in a fiduciary capacity toward Whish prior to his appointment as personal representative. Instead, the district court focused on the ownership of the funds transferred by Whish to Bienfang's account, and the question whether Whish specifically consented to the use of those funds for purchase of the vehicles and payment for home improvements. We conclude that the district court applied an incorrect legal standard to the question of ownership and also that its findings relative to consent were clearly erroneous.

■ Once Whish transferred the funds to Bienfang's sole account, Bienfang became the presumptive legal owner of them and could use them for any purpose. *See Loth v. Loth,* 227 Minn. 387–394, 35 N.W.2d 542, 547 (1949) (holding that where funds were deposited into a joint account for purposes of paying $6,715, the remainder was found to be a gift). That presumption could only be overcome by a finding that Bienfang obtained possession of the funds by fraud, theft, conversion or other wrongful act. *Id.* There was no such finding, nor would the evidence support such a finding.

This transfer of ownership occurs even where a decedent places funds in a joint account with another person. Upon the decedent's death, the funds become the property of the surviving joint tenant, absent clear and convincing evidence of a different intent. Minn.Stat. § 524.6–204(a) (2000). The transfer of funds to the sole account of another person, such as here, shows an even stronger intent to transfer ownership.

There was no evidence of any intent by Whish to limit, restrict or qualify Bienfang's ownership of the funds. In this regard, the presumption relieved Bienfang of the burden to prove an intent to make a gift, and instead required Whish Smith to rebut the presumption by proving a different intent or proving fraud, theft, conversion or other wrongful act. No such proof was presented.

■ However, even if the legal test turned upon whether Whish consented to the expenditures made by Bienfang with the transferred funds, we believe the district court's finding that she did not consent was clearly erroneous. *See Rogers v. Moore,* 603 N.W.2d 650, 656 (Minn.1999) (holding that trial court's factual findings must be clearly erroneous or "manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole" to warrant reversal) (quoting *Northern States Power Co. v. Lyon Food Products, Inc.,* 304 Minn. 196, 201, 229 N.W.2d 521, 524 (1975)).

The trial record contains uncontradicted evidence of the following: (1) Whish purchased the house for Bienfang and Addison; (2) she willingly and repeatedly commingled her funds in Bienfang's account and allowed him to use those funds for their living costs; (3) she arranged that Bienfang would have physical and legal custody of Addison after her impending death; (4) in support of the custody petition, she stated that she did not want her other children to gain custody of Addison because they would be seeking his inheritance; (5) her physician declared her of sound mind less than four months prior to

---

1. The powers of a personal representative relate back in time to recognize acts by the appointee occurring before an appointment that are *beneficial* to the estate. Minn.Stat. § 524.3–701; *Abendroth v. Nat'l Farmers Union Prop. & Cas. Co.,* 363 N.W.2d 785, 787 (Minn.App.1985).

her death and after transfers had been made; (6) Bienfang testified that Whish wanted him to make the challenged expenditures; (7) one year prior to the purchase of the vehicles, Whish gave Bienfang title to a vehicle she owned; (8) Whish initiated the idea for the home improvements and was involved in making the arrangements and (9) Whish knew that the vehicles had been purchased and rode in them prior to her death.

## DECISION

We reverse the monetary judgment against appellant and direct the entry of judgment dismissing the monetary claim.

**Reversed.**